WADE HALABI *v.* ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT, ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued May 5—decision released July 27, 1976

*Bruce A. Morrison,* for the appellant (plaintiff).

*Leonard M. Caine,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Donald E. Wasik,* assistant attorney general, for the appellee (named defendant).

*Jeremy G. Zimmermann,* for the appellee (defendant Yale University).

BARBER, J. The plaintiff appealed to the Superior Court from the decision of an unemployment commissioner which held that the plaintiff was ineligible for unemployment benefits and liable to repay benefits previously received. The court rendered judgment dismissing the appeal, and the plaintiff has appealed to this court.

The facts found by the commissioner are undisputed and can be briefly summarized. The plaintiff worked for Yale University for one year as a research assistant and was paid $6200 per year. On November 30, 1970, his employment was terminated because of his department's lack of funds. Yale University is a nonprofit organization which first became subject to the Unemployment Compensation Act (General Statutes, c. 567) on January 1, 1971. The plaintiff filed a claim for unemployment benefits on January 31, 1971, and through September 11, 1971, he received $1920 from the unemployment compensation fund. On December 3, 1971, the administrator requested that he refund this amount as an overpayment under § 31-273 (b) of the 1969 Supplement to the General Statutes. Relying on a new interpretation of eligibility, and on the fact that the plaintiff had separated from Yale University before January 1, 1971, the administrator held that his wages from the university could not be used for computing unemployment benefits. On appeal, the commissioner upheld this determination.

The plaintiff claims that the court erred (1) in sustaining the commissioner's determination that the plaintiff was ineligible for the unemployment

compensation benefits that he received; (2) in sustaining the commissioner's determination that the plaintiff is liable to reimburse the administrator for the unemployment compensation benefits that he received; and (3) in failing to hold that the plaintiff's denial of eligibility for unemployment compensation benefits unconstitutionally deprived him of equal protection of the law.

The plaintiff's claims pertaining to eligibility were neither raised nor discussed in the trial court. The trial court's function was limited to a determination of whether the commissioner, as alleged in the appeal, acted illegally, arbitrarily and in abuse of the discretion vested in him. *Jenkins* v. *Zoning Board of Appeals,* 162 Conn. 621, 623, 295 A.2d 556; see *Taminski* v. *Administrator,* 168 Conn. 324, 326, 362 A.2d 868. We, therefore, do not consider this issue. Practice Book §§ 223, 652; *Levine* v. *Randolph Corporation,* 150 Conn. 232, 243, 188 A.2d 59. As background for the remaining issues, however, we do make reference to some of the statutes involved. Section 31-235 of the 1969 Supplement to the General Statutes, which is substantially similar to the current § 31-235, provided that "[a]n unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that . . . (3) he has been paid wages by an employer who was subject to the provisions of [General Statutes, c. 567] . . . ." Sections 31-274a to 31-274f (which became effective January 1, 1971, and were repealed effective December 31, 1971) provided that nonprofit organizations shall become subject to the Unemployment Compensation Act. The commissioner found that Yale University was not a covered employer within the meaning of the Unemployment Compensation

Act prior to January 1, 1971, and that the plaintiff's employment ended before that date. Therefore, the plaintiff was at no time an employee of a covered employer for purposes of determining eligibility for unemployment compensation benefits.

We now consider the plaintiff's claim that he cannot properly be required to reimburse the administrator for the unemployment benefits he received in 1971. The plaintiff contends that the initial decision granting benefits became final and established a vested right to the benefits when the employer failed to appeal. Unemployment compensation statutes of many states contain provisions for the repayment of benefits erroneously paid to one disqualified from receiving such benefits. 76 Am. Jur. 2d, Unemployment Compensation, § 37. In this state we have such a provision embodied in § 31-273 (b). The statute governing the present case was § 31-273 (b) of the 1969 Supplement to the General Statutes,[1] which was substantially similar to the current § 31-273 (b). This provision expressly required reimbursement of benefits received by an ineligible recipient, provided the error was discovered and brought to the attention of the recipient within one year of the date of the receipt of such benefits. The plaintiff's reliance upon our decision in *Cicala* v. *Administrator*, 161

---

[1] "[1969 Supplement to General Statutes] Sec. 31-273, subsec. (b). REPAYMENT OF BENEFITS RECEIVED ILLEGALLY OR THROUGH MISTAKE. Any person who, by reason of nondisclosure or misrepresentation by him or by another of a material fact, whether or not such nondisclosure or misrepresentation was intentional or fraudulent, has received any sum as benefits under this chapter while any condition for the receipt of benefits imposed by this chapter was not fulfilled in his case, or while he was disqualified from receiving benefits, and any person who has received a greater amount of benefits than was due him under this chapter, shall be liable to repay to the administrator for the unemployment compensation fund a sum equal to the

Conn. 362, 368, 288 A.2d 66, to support his claim that the administrator could not reverse himself, is misplaced. *Cicala* dealt with the question of when a decision of a commissioner becomes final pursuant to § 31-248 for purposes of barring him from opening and reversing such a decision. In the present case, the commissioner at no time reversed his decision. In view of § 31-273 (b), the plaintiff took his benefits subject to the statutory provision concerning reimbursement and acquired no vested right. See *Hagerty* v. *Administrator,* 137 Conn. 129, 133, 75 A.2d 406; note, 20 A.L.R.2d 963. Section 31-273 (b), providing for reimbursement of benefits received through error, applies when the recipient was disqualified from receiving such benefits, despite the fact that the erroneous payments were not made as a result of fraudulent nondisclosure or misrepresentation. See *Hatch* v. *Employment Security Agency,* 79 Idaho 246, 254, 313 P.2d 1067; 76 Am. Jur. 2d, loc. cit.; see also *State* v. *Rucker,* 211 Md. 153, 157, 126 A.2d 846.

The plaintiff further argues that the purpose of the statutory provision requiring reimbursement (§ 31-273 [b]) is to secure and preserve the financial stability of the unemployment compensation fund. Therefore, the plaintiff contends, the provi-

amount so received by him or so overpaid to him, and such sum shall be collectible in the manner provided in section 31-266 for the collection of past due contributions. Any person who, through error, has received any sum as benefits under this chapter while any condition for the receipt of benefits imposed by this chapter was not fulfilled in his case, or while he was disqualified from receiving benefits, and any person who has received a greater amount of benefits than was due him under this chapter, shall be liable to repay to the administrator for the unemployment compensation fund a sum equal to the amount so received by him or so overpaid to him, provided such error has been discovered and brought to his attention within one year of the date of receipt of such benefits. . . ."

sion is not applicable to his case because § 31-274d permitted nonprofit organizations to pay into the unemployment compensation fund "an amount equivalent to the amount of benefits paid out to claimants," in lieu of contributions required of other employers. It is true that the general purpose of the statutory provision requiring reimbursement is to preserve and secure the financial stability of the unemployment compensation fund. *Cicala* v. *Administrator, supra,* 368. This purpose, however, must be interpreted in accordance with the clear wording of the statute which requires that claimants who have received benefits to which they are not entitled must pay them back. We do not read into the explicit language of the statute any requirement that favored treatment be given to employees of nonprofit organizations over employees of profit-making organizations. In either case, it is the duty of the administrator to collect from a claimant such benefits as he has mistakenly paid. That the method of contribution to the unemployment compensation fund may differ for nonprofit organizations is immaterial.

Finally, the plaintiff claims that by being denied unemployment compensation benefits he has been deprived of equal protection of the law in violation of the federal and state constitutions. U.S. Const., amend. XIV; Conn. Const., art. I § 20. The approach to equal protection claims is substantially the same under both the federal and state constitutions. *Page* v. *Welfare Commissioner,* 170 Conn. 258, 264, 365 A.2d 1118; *Kellems* v. *Brown,* 163 Conn. 478, 485, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678. Equal protection rights do not "prevent the legislature from dealing differently with different classes of

people. It means only that classifications must be based on natural and substantial differences, germane to the subject and purpose of the legislation, between those within the class included and those whom it leaves untouched." *Tough* v. *Ives,* 162 Conn. 274, 293, 294 A.2d 67; see *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989; *Gentile* v. *Altermatt,* 169 Conn. 267, 300, 363 A.2d 1. And, "it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment [of the United States Constitution] if any state of facts reasonably can be conceived that would sustain it." *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U.S. 522, 528, 79 S. Ct. 437, 3 L. Ed. 2d 480; *Dandridge* v. *Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491; *McGowan* v. *Maryland,* 366 U.S. 420, 426, 81 S. Ct. 1101, 6 L. Ed. 2d 393.

The purpose of our unemployment act is "to guard against involuntary unemployment within the limitations prescribed." *Baldassaris* v. *Egan,* 135 Conn. 695, 698, 68 A.2d 120. "To say, as we frequently have, that the Unemployment Compensation Act should be construed liberally in favor of beneficiaries in order to effectuate its purpose . . . is not to say that it should be construed unrealistically in order to distort its purpose." *Furber* v. *Administrator,* 164 Conn. 446, 454, 324 A.2d 254. It is not unusual for unemployment compensation statutes to exempt services performed for nonprofit organizations. See 76 Am. Jur. 2d, op. cit. § 26. Although our statutes now cover service performed for nonprofit organizations under certain conditions, the term "employment" exempts several types of service or employment except when volun-

tarily assumed. General Statutes § 31-222. The federal Unemployment Tax Act exempts services performed in seventeen different categories of employment, including, for instance, agricultural labor and domestic services. 26 U.S.C. § 3306 (c); see also General Statutes § 31-222 (a) (5) (A) and (B); *H. Duys & Co.* v. *Tone,* 125 Conn. 300, 306, 5 A.2d 23. "In establishing a system of unemployment benefits the legislature is not bound to occupy the whole field. It may strike at the evil where it is most felt, . . . or where it is most practicable to deal with it . . . . It may exclude others whose need is less." *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 519–20, 57 S. Ct. 868, 81 L. Ed. 1245. Although it is a tax case, the reasoning of *Carmichael* is particularly apt to the factual situation in this case. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge* v. *Williams,* supra, 485; cf. *Jimenez* v. *Weinberger,* 417 U.S. 628, 94 S. Ct. 2496, 41 L. Ed. 2d 363. "The legislature has a wide range of discretion in making classifications and primarily this question is one for it and the courts will not interfere unless the classification is clearly unreasonable." *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 219, 21 A.2d 383. Furthermore, "a less rigorous standard" should be applied upon review of a statute which extends new benefits. *Russell* v. *Hodges,* 470 F.2d 212, 219 (2d Cir.). Religious, charitable and educational institutions have traditionally been singled out for exemption from burdens placed upon profit-making organizations. See 71 Am. Jur. 2d, State and Local Taxation, § 362. The Unemployment Compensation Act which prior

to January 1, 1971, excluded employees of nonprofit organizations from the benefits and protection of the act did not unreasonably deny equal protection to the plaintiff. *Von Stauffenberg* v. *District Unemployment Compensation Board,* 459 F.2d 1128 (D.C. Cir.).

There is no error.

In this opinion the other judges concurred.