[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals from the final decision of the defendant, Commissioner of the Department of Mental Retardation (Commissioner), dated November 5, 1990, which held that he was not eligible to receive services he requested from the Department of Mental Retardation (DMR) because he was not mentally retarded, and denied his request for a hearing to determine his eligibility.
The Commissioner found that the facts of this case were CT Page 9805 not disputed by the parties. Those facts are summarized as follows: Paul Foti is a twenty-one year old man who has been classified as a person with autism. He is not a person with mental retardation. He needs a range of services, including residential and vocational services. He applied to DMR for residential and vocational services and case management.
The plaintiff contends that, although he is not a person with mental retardation, he is eligible for certain services of DMR by virtue of 19a-462 of the Connecticut General Statutes. That statute, which was recodified as 17a-215 of the Connecticut General Statutes (1991 Rev.), provides:
 The department of mental retardation shall serve as the lead agency to coordinate, where possible, the functions of the several state agencies which have responsibility for providing services to autistic persons.
In her decision the Commissioner found that neither the language of the above statute, nor its legislative history, supported the plaintiff's position. She further found that the statutory authority for DMR's provision of care, treatment and services limited such provisions to mentally retarded persons: Connecticut General Statutes 17a-210 authorizes state-wide services for "persons with mental retardation"; 17a-217
authorizes the development of day-care and recreational programs for "mentally retarded children and adults"; 17a-218 authorizes the Commissioner to provide housing subsidies to persons with mental retardation, to provide respite care and a full range of services to support mentally retarded persons; 17-226 mandates that the Commissioner provide employment opportunities for adults with mental retardation; and 17a-227 authorizes DMR to contract with persons to provide residential support services for persons with mental retardation. (emphasis supplied.)
The Commissioner reviewed the legislative history of Section 19a-462 (now 17a-215) and noted that the following statement concerning the statute was made to the General Assembly:
 SEN. CIARLONE (11th): The intent of this legislation is to bring together all of the various agencies together that relate to autistic childen. (sic)
22 S.Proc. Pt. 10, 1979 Sess., page 3149.
Based on the unambiguous language of 19a-462 this court finds that the Commissioner correctly concluded that that statute does not require DMR to provide services to persons who CT Page 9806 are autistic, but are not mentally retarded. Words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed. DuBaldo v. Department of Consumer Protection, 209 Conn. 719, 722, 552 A.2d 813 (1989). The language of the statute merely makes DMR the legal agency to coordinate statutorily authorized services for persons with autism. It does not authorize or create any additional services for such persons. The legislature has clearly delineated services to be provided by DMR and has limited those services to persons who are mentally retarded. If the legislature had wished to expand those services to all persons who are autistic, it could easily have done so.
The plaintiff argues that the Commissioner's refusal to provide him with the services he seeks constitutes illegal discrimination under the provisions of 46a-71 of the Connecticut General Statutes and Article XXI of the Amendments to the Constitution of Connecticut.
Section 46a-71 provides that "[a]ll services of every state agency shall be performed without discrimination based upon . . . mental retardation or physical disability. . . ." Article XXI to the Amendments to the Constitution of Connecticut provides:
 No person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability.
The plaintiff claims that he was denied DMR services due to his disability: autism. As the defendant points out, under the same reasoning, a genius who is confined to a wheelchair, could similarly argue that a denial of DMR services constituted disability-based discrimination. Such an argument is obviously untenable.
The plaintiff was not denied DMR services due to any disability, but due to his lack of disability: mental retardation. Equal protection rights do not prevent the legislature from dealing differently with different classes of people. Classifications must be based on "`natural and substantial differences, germane to the subject and purpose of the legislation between those within the class included and those whom it leaves untouched.' Tough v. Ives, 162 Conn. 274, 293,294 A.2d 67; see F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415,40 S.Ct. 560, 64 L.Ed. 989; Gentile v. Altermatt, 169 Conn. 267, 300,363 A.2d 1." Halabi v. Administrator, 171 Conn. 316, 370 A.2d 938
(1976). CT Page 9807
The legislation authorizing DMR to provide programs and services to a class of Connecticut citizens, those with mental retardation, is based on natural and substantial differences germane to the subject and purpose of the legislation. Therefore, the defendant's denial of services to the plaintiff does not violate any equal protection rights of the plaintiff and does not constitute a denial of statutory rights based on the plaintiff's physical disability.
The defendant claims that the plaintiff is not appealing from a "final decision" within the meaning of 4-166 of the Connecticut General Statutes. That statute provides:
 "Final Decision" means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration.
 "Contested case" means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held. . . .
Conn. Gen. Stat. 4-166(3) and (2), respectively, (1991).
The phrase "required by statute to be determined" applies both where there is an opportunity for a hearing and where a hearing is actually held. Herman v. Division of Special Revenue, 193 Conn. 379, 383, 477 A.2d 119 (1984). A hearing "can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or, of course, it can be a combination of the two. See Davis, Administrative Law Text (3d Ed.) 7.01." Rybinski v. State Employees' Retirement Commission, 173 Conn. 462, 470,378 A.2d 547 (1977).
In this case the facts were not is dispute. Therefore, there was no need for an evidentiary hearing. The Commissioner made a finding of those facts in her final decision. The defendant was given an opportunity to present documentary evidence and written legal argument and did so. Based on the foregoing the plaintiff does appeal from the final decision in a contested case within the meaning of 4-166.
For the reasons set forth above the court finds that the Commissioner did not act in violation of constitutional or CT Page 9808 statutory provisions and her decision was not arbitrary or capricious. The appeal is, therefore, dismissed.
By the Court, Aurigemma, J.