[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Daniel J. Julian, appeals from the decision of the defendant, Department of Consumer Protection, State Commission of Pharmacy (hereinafter called the "Commission"), revoking the plaintiff's license to practice pharmacy for a period of three years from the date of issuance of the Commission's final decision and order. The defendant Commission acted pursuant to General Statutes 21-7(7). The plaintiff appeals pursuant to General Statutes 4-183. CT Page 10144
The Commission's decision was mailed to the plaintiff on December 24, 1992. On January 21, 1993, the plaintiff submitted to the Commission a petition for reconsideration. The Commission granted this request on February 17, 1993. The plaintiff filed this appeal with the clerk of the superior court on February 4, 1993. The plaintiff served the Commission February 5, 1993 and the Attorney General's office as agent for service of the Commission on February 9, 1993. On March 9, 1993, after reconsideration, the Commission affirmed its decision to suspend the plaintiff's right to practice pharmacy for three years.
On June 14, 1993, pursuant to General Statute 4-183(h), the plaintiff filed a motion for leave to present additional evidence. The court (Sullivan, J.), granted this motion on July 6, 1993. The appeal was heard by the court on July 28, 1993.
On October 16, 1992, the Commission filed an administrative complaint against the plaintiff, Daniel Julian, a pharmacist registered in Connecticut. In the administrative complaint, the defendant Commission alleged that "[f]rom on or about April of 1991, to on or about January of 1992, the plaintiff generated prescriptions for controlled substances without the authorization of a practitioner and illegally possessed and diverted said controlled substances."
Subsequent to a hearing in which plaintiff attended pro se, the Commission found that the plaintiff's actions constituted violations of General Statutes 20-175(3), (9), 21a-250(a),21a-266(a), (c), (e) and 21a-279(c), in that the plaintiff between April 1991 and January 1992 generated twenty prescriptions for controlled substances without the authorization of a practitioner, and illegally possessed and diverted said controlled substances. Consequently, the Commission ordered the revocation of the plaintiff's license to practice pharmacy and advised the plaintiff that he would not be issued a new pharmacist license for at least three years. The Commission further ordered that if plaintiff intends to reapply for his license, he must complete yearly continuing education requirements and continue psychiatric counseling with proper documentation of each. Also, the plaintiff was prohibited from working in any capacity in the prescription department of any pharmacy.
In a letter dated January 15, 1993, plaintiff requested that CT Page 10145 the Commission reconsider its final decision and order. The Commission granted this request on February 17[,] 1993, to the extent that it would review a letter from the plaintiff's therapist. After reviewing the letter from plaintiff's therapist, the Commission affirmed its earlier decision to revoke the plaintiff's license for at least three years.
The plaintiff filed an amended complaint relative to this appeal on May 24, 1993. In his amended complaint, the plaintiff alleges that "[t]he findings, conclusions and decision of . . . the defendant are in violation . . . of plaintiff's constitution [sic] rights [because] it [sic] deprives [him] of his property, liberty and freedom of movement without due process of law . . ., does [sic] not afford him equal protection of the law . . ., are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . . [and] are arbitrary, capricious, and characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
"Appeals to courts from administrative agencies exist only under statutory authority . . . . A statutory right to appeal may be exercised only by strict compliance with the statutory provisions by which it is created." Miller v. Conservation Commission, 27 Conn. App. 590, 595, 607 A.d 1159 (1992).
"It is fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168,172 592 A.2d 386 (1991). "[Section] 4-183(a) . . . expressly require[s] that one be `aggrieved' by a `final decision' in order to appeal. In the absence of such aggrievement, the appeal must be dismissed for lack of subject matter jurisdiction." Connecticut Business Industry Assn., Inc. v. CHHC, 214 Conn. 726, 739-30, 573 A.2d 736 (1990).
"[T]he fundamental test for determining aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the plaintiff's personal and legal interest has been specially and injuriously affected by the decision." Light Rigging Co. v. Department of Public Utility Control, supra, 173. CT Page 10146 The court finds that the plaintiff's specific, personal and legal interest in his license to practice pharmacy has been specially and injuriously affected by the Commission's decision because the plaintiff cannot practice his profession for three years as a result of the Commission's decision. Therefore, the court finds that the plaintiff is aggrieved.
"General Statutes 4-183(c) requires the filing of [the appeal] within forty-five days of the mailing of the commission's decision", Miller v. Conservation Commission, supra, 593. "[L]ack of compliance with [this] provision renders an appeal subject to dismissal." Since the Commission's decision was mailed on December 24, 1992, and the plaintiff filed his appeal with the Superior Court on February 4, 1993, and served the Commission on February 5, 1993, the plaintiff has complied with the statutory time limitations.
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (hereinafter referred to as UAPA) . . . and the scope of that review is very restricted." New Haven v. Freedom of Information Commission, 205 Conn. 767, 773, 535 A.2d 1297 (1988). "[T]he trial court may [not] retry the case or substitute its own judgment for that of the defendant." Id. "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Id. "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." Id., 774.
Under the substantial evidence test, [t]he court can do no more, on the factual issued presented, than to examine the record to determine whether the ultimate findings were supported . . . by substantial evidence." Norwich v. Norwich Fire Fighters, 173 Conn. 210, 214, 377 A.2d 290 (1977). If the findings are supported by substantial evidence, they cannot be disturbed. Id.; See General Statutes 4-183j.
Section 4-177 of the UAPA describes, in pertinent part, the general notice required in all contested cases as follows: "(a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." Under section4-182(a) of the UAPA, "`when the grant, denial or renewal of a CT Page 10147 license is required to be preceded by notice and opportunity for a hearing, the notice must, under 4-177(b)(4), contain "a short and plain statement of the matters asserted."'" See Levinson v. Board of Chiropractic Examiners, 211 Conn. 508, 534,560 A.2d 403 (1989). Section 4-182(c), however, provides: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action." "The stricter notice requirements [contained in 4-182(c)] are a function of the more compelling private interest involved" in revocation and suspension proceedings. See Levinson, supra.
"The due process clauses of the federal and state constitutions have the same meaning and impose similar limitations." Leib v. Board of Examiners for Nursing, 177 Conn. 78,81-2, 411 A.2d 42 (1979). A license to "engage in business or practice a profession is a property right that cannot be taken away without due process of law. The granting of such license is a right conferred by administrative act, but the deprivation of the right is a judicial act requiring due process." Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles, 165 Conn. 42, 47 n. 1, 327 A.2d 599 (1973).
When the "effect of the [administrative] procedure, if a violation is found, is revocation or suspension of the license, the valuable property right on which the licensee and many people may depend for their livelihood . . . due process requires that the notice given must advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law." Levinson, supra, 534-535.
The "conduct at the [administrative] hearing shall not violate the fundamentals of natural justice. That is, . . . at the hearing no one can be deprived of the right to produce relevant evidence or to cross-examine witnesses . . . or to be fairly apprised of the facts upon which the Commissioner is to act." Balch Pontiac-Buick, Inc. v. Commissioner of Motor Vehicles, 165 Conn. 559, 569, 345 A.2d 520 (1973).
The "`procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause.'" Pet v. Department of Health Services, 207 Conn. 346, 356, 357, CT Page 10148542 A.2d 672 (1988).
A license issued by the State Commission of Pharmacy is required before one can operate a pharmacy or engage in the practice of pharmacy. General Statutes 20-168 et seq. It is, thus, a license to engage in a business or profession and may not be revoked or suspended without due process of law. See Hart Twin Volvo Corp., supra, 47 n. 1. Therefore, the administrative procedures to which the plaintiff is entitled must satisfy the requirements of section 4-182(c) and the principles of due process set forth above.
In his brief, the plaintiff argues that he was deprived of his property without due process of law and the action taken by the Commission was arbitrary, capricious, and an abuse of discretion. However, after a careful examination of the record of the administrative hearing and of the administrative complaint issued against plaintiff, it is found that the Commission complied with the due process requirements set forth above. In its administrative complaint against the plaintiff, the Commission stated with particularity that the plaintiff's "[generating] prescriptions for controlled substance without the authorization of a practitioner and illegally [possessing] and [diverting] said controlled substance . . . constitute[d] a violation of General Statutes 20-175(3), (9), 21a-250(a), 21a-266(a), (c), (e) and 21a-279(c)". Furthermore, the Commission informed the plaintiff that such conduct was "cause for revocation or suspension of [his] pharmacist license."
In addition, the record reflects that the plaintiff was given several opportunities at the hearing to inspect the materials before they were admitted as evidence, was informed that he may object to the materials being entered in as evidence, and retained copies of the evidence being submitted. Furthermore, after being informed by the hearing officer of his right to cross-examine the state's witness, the plaintiff did so.
The plaintiff argues in his brief that "[a]lthough the record reflects the fact that he was given an opportunity to inspect relevant and materials records, papers, and documents while the final hearing was in progress . . ., the record does not reflect the fact that the plaintiff was given a reasonable opportunity to inspect relevant and material records, papers and documents at any time prior to the final hearing." However, due CT Page 10149 process and Uniform Administrative Procedure Act standards do not mandate that one be afforded an opportunity to inspect relevant and material records, papers and documents, prior to an administrative hearing. Moreover, the plaintiff cites no authority to suggest that due process requires that he be given an opportunity to inspect relevant and material documents prior to the administrative hearing. The minimal standards of due process were met by the Commission in this case and the plaintiff's appeal should not be sustained based on due process grounds.
Next, the plaintiff argues that he was prejudiced by a procedural irregularity in that "it is apparent from the record that he not only did not understand the meaning of the charges, he also did not comprehend the scope of the charges." The plaintiff reasons that, "[b]ecause he did not understand the meaning or scope, he could not present a meaningful defense," which constitutes prejudice.
"[A]n administrative appeal `shall be confined to the record' but . . .' in cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in court." Adrioni v. Commission on Human Rights and Opportunities, 220 Conn. 307, 325, 596 A.2d 426
(1991).
"There is a strong presumption of regularity in the proceedings of [administrative agencies] . . . Even if that presumption concerning the proceedings is rebutted, however, not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown.'" Murach v. Planning Zoning Commission, 196 Conn. 192, 205, 491 A.2d 1058 (1985). "The substantial evidence test assumes that an agency's decision is not tainted by procedural irregularities that implicate the validity of the decision itself. Where there is a question . . . as to whether an agency favored a certain outcome or applied an incorrect standard in reaching its decision, the court must determine whether the alleged procedural irregularities did in fact occur before it can utilize the substantial evidence test." Adrioni, supra, 327.
The plaintiff has provided this court with no evidence, and the record reveals no evidence, in support of his argument that the administrative procedures were tainted with procedural CT Page 10150 irregularities.
Moreover, plaintiff was informed of his right to obtain counsel prior to the hearing. The record indicates that the plaintiff did understand the nature of the charges against him. Therefore, the plaintiff's appeal cannot be sustained on the ground that a procedural irregularity existed.
"[T]he equal protection clauses of the state and federal constitutions mean substantially the same thing and may be considered together." Page v. Welfare Commission, 170 Conn. 258,264, 365 A.2d 1118 (1976). "Equal protection rights do not `prevent the legislature from dealing differently with different classes of people. It means only that classifications must be based on natural and substantial differences.' . . ." Halabi v. Administrator, 171 Conn. 316, 321-22, 370 A.2d 938 (1976).
"Lack of equal protection is found in the actual existence of an invidious discrimination . . ., not in the mere possibility that there will be like or similar cases which will be treated more leniently." Queenside Hills Realty Co., Inc. v. Saxl, 328 U.S. 80, 84-85, 90 L.Ed. 1096, 66 S.D. 850 (1945). "It has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the fourteenth amendment [of the United States Constitution] if any state of facts reasonably can be conceived that would sustain it." Halabi v. Administrator, supra, 322.
In the present case, the plaintiff claims "he was deprived of equal protection of the law because, in at least two other situations which he alleges were similar to his, pharmacists were not treated as harshly as he was." The plaintiff argues that "[o]ther pharmacists who face disciplinary proceedings by the Commission due to allegations of impropriety and for statutory violation stand in the same relation to the Commission as does [he]." Therefore, the plaintiff argues, it logically follows that the disciplinary action taken by the Commission should have been consistent with that action taken in the other alleged situations where pharmacists were punished for similar unlawful conduct.
The plaintiff did not present any evidence other than his own testimony to prove that in two other incidents the Commission treated "similarly situated" pharmacists more CT Page 10151 leniently than they treated him.
The Commission's decision to revoke the plaintiff's license for three years, instead of merely placing the plaintiff on probation, could conceivably be supported by a reasonable set of facts which did not exist in the other two incidents in which the allegedly "similarly situated" pharmacists received more lenient punishment than the plaintiff. As set forth above, in such a situation the Commission's decision to revoke one's license and not another's does not necessarily violate the former's equal protection rights under either the federal or state constitutions. Pursuant to Connecticut General Statutes, the Commission has a wide range of penalties from which to choose when disciplining Connecticut's pharmacists. (See General Statutes 21a-7(7)). Therefore, the plaintiff's appeal should not be sustained based upon a denial of equal protection rights.
The record is replete with evidence to support the decision of the Commission. The record reveals that the plaintiff, through his own admission, acknowledged that generating prescriptions for controlled substances without the authorization of a doctor, and possessing and converting controlled substances is illegal. Furthermore, the plaintiff made a written statement to the pharmacy in which he worked, admitting to taking and converting controlled substances. Thus, the plaintiff's appeal cannot be sustained on the ground that the action taken by the Commission was arbitrary, capricious, and characterized by an abuse of discretion.
For all the foregoing reasons, the plaintiff's appeal is dismissed.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN