CITY OF HARTFORD ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(14074)

O'Connell, Landau and Spear, Js.

Argued January 9—officially released April 16, 1996

*Victor Perpetua,* commission counsel, with whom, on the brief, were *Mitchell W. Pearlman,* general counsel, and *Barbara E. Housen,* commission counsel, for the appellant-appellee (named defendant).

*Karen K. Buffkin,* assistant corporation counsel, with whom, on the brief, was *Pedro E. Segarra,* corporation counsel, for the appellees-appellants (plaintiffs).

*Ralph G. Elliot,* for the appellees (defendant Hartford Courant et al.).

LANDAU, J. This is an appeal by the defendant freedom of information commission (commission) and a cross appeal by the city of Hartford[1] from the judgment of the trial court sustaining in part and dismissing in part the city's appeal from the decision of the commis-

---

[1] The purchasing department of the city of Hartford is also a plaintiff. In this opinion, city refers to both plaintiffs.

sion. On appeal, the commission claims that the trial court improperly (1) failed to apply the appropriate standard of judicial review, and (2) concluded that General Statutes § 1-19 (b) (7)[2] exempts from disclosure responses submitted by construction management companies to the city's requests for proposals (RFP).

In the cross appeal, the city claims that the trial court improperly (1) failed to rule that, because the provisions of the Freedom of Information Act (act) requiring disclosure of public records are subordinate to other state statutes that authorize an agency not to disclose information that otherwise might be subject to the act, the responses to the RFP were exempt from disclosure by virtue of certain provisions in the Hartford city charter, which is a special act of the legislature, and (2) concluded that the evaluations of the submitted proposals were not exempt from disclosure pursuant to § 1-19 (b) (7). The sole issue raised by the cross appellee, the Hartford Courant, is whether the Hartford city charter is a state statute within the meaning of § 1-19 (a).

The following facts are not in dispute. In November, 1990, the Hartford electorate approved a $21 million bond project to finance the renovation and expansion of the Moylan elementary school. In a later referendum, the electorate also approved a five to ten year $200 million school construction project. Because of the magnitude of the project and the extensive construction work involved, the city manager, Howard J. Stanback, proposed the employment of a construction manager to oversee the project.

[2] General Statutes § 1-19 (b) provides in pertinent part: "Nothing in [the act] . . . shall be construed to require disclosure of . . . (7) the contents of real estate appraisals, engineering or feasibility estimates and evaluations made for or by an agency relative to the acquisition of property or to prospective public supply and construction contracts, until . . . all proceedings . . . have been terminated or abandoned . . . ."

In October, 1992, seeking to test the construction manager strategy, the city issued a RFP.[3] Ten firms responded to the RFP by submitting proposal applications. In accordance with the Hartford city charter, an eight member advisory panel was selected to assist Stanback in the procurement process. Each panel member completed proposal evaluations for each of the ten applicants. The panel submitted the names of the top three firms to Stanback in January, 1993. One firm was chosen and submitted to the Hartford city council for approval. After that firm was rejected, a second firm was approved. On June 26, 1993, the city contracted with the prevailing party.

In March, 1993, the Hartford Courant made a written request to the city, under the act, seeking to inspect and copy the files containing the ten responses to the RFP and the evaluations. The city denied the request claiming that the records were not required to be disclosed under the act during the RFP procurement process. The Hartford Courant filed a complaint with the commission. At the commission hearing, which took

[3] "Implicit in the definition of an RFP is the underlying rationale that, in some types of competitive procurement, the agency may desire an ultimate goal but cannot specifically tell the offerors how to perform toward achieving that goal; thus, a ready distinction arises between an RFP and an IFB [invitation for bids]. Typically, an IFB is rigid and identifies the solution to the problem. By definition, the invitation specifically defines the scope of the work required by soliciting bids responsive to the detailed plans and specifications set forth. . . . On the contrary, an RFP is flexible, identifies the problem, and requests a solution. Consideration of a response to an IFB is controlled by cost, that is, the lowest and best bid, whereas consideration of an offer to an RFP is controlled by technical excellence as well as cost." *System Development Corp.* v. *Dept. of Health & Rehabilitative Services*, 423 So. 2d 433, 434 (Fla. App. 1982).

The city's intent was summarized in the RFP as follows: "The city of Hartford solicits proposals from qualified construction management firms to provide bidding and construction phase project management services for the Moylan elementary school. All work performed under this contract shall be under the direction of a firm principal and qualified construction superintendent."

place in July, 1993, after the procurement process had been completed, the city provided the Hartford Courant with access to all of the requested documents.

Nevertheless, the commission rendered a decision on the issue of whether the city's release of the requested files satisfied the promptness requirements of General Statutes §§ 1-15 (a) and 1-19 (a). The city contended that the records at issue were exempt from disclosure during the procurement process under § 1-19 (b) (7) of the act because they were feasibility estimates. The commission, however, concluded that the act "does not exempt from public disclosure the applications provided in response to an agency's [RFP] for construction management services, or the agency's evaluations of such applications." The commission concluded further that "in the absence of a state statute that permits the confidentiality of what amounts to bid documents and the evaluations thereof, the [city] violated §§ 1-15 and 1-19 (a) [of the General Statutes] when it failed to provide prompt access to inspect the records requested."

The city appealed from the commission's decision. The trial court rendered judgment sustaining the appeal regarding the responses to the RFP and dismissing the appeal regarding the evaluations. This appeal and cross appeal followed.

I

THE APPEAL

The commission claims that the trial court failed to exercise appropriate judicial restraint in applying the suitable standard of judicial review set forth in General Statutes § 4-183 (j)[4] when it sustained the administrative

---

[4] General Statutes § 4-183 (j) provides in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings . . . conclusions,

appeal regarding the responses to the city's RFP. The commission argues that, because its action was supported by substantial and competent evidence on the whole record, the trial court should have upheld its decision. The city, however, asserts that the trial court's review was proper because the commission's decision was affected by an error in statutory construction, which is a question of law and a matter for the courts. Specifically, the city argues that the trial court properly determined that the responses to the RFP and the evaluations fall within the definition of "engineering or feasibility estimates and evaluations"[5] and, thus, are exempt from disclosure under § 1-19 (b) (7).

"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant." (Citations omitted; internal quotation marks omitted.) *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988). "Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Id., 774.] Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its

or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ."

[5] See footnote 3.

enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980). . . . *Perkins* v. *Freedom of Information Commission*, [228 Conn. 158, 164–65, 635 A.2d 783 (1993)]." (Internal quotation marks omitted.) *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995).

The record reveals that the commission concluded, on the basis of the evidence before it, that there was no statutory or other support for the categorical exclusion of the records pertaining to the contract for management services from the disclosure provisions of the act. The commission's decision met the factual situation as presented, that is, whether the records concerning the construction manager, whose function it is to manage and supervise the construction project, fell within the protection of the statutory exemption set forth in § 1-19 (b) (7).

The trial court needlessly enlarged the issue on appeal by analyzing the question of whether the relevant records are engineering documents, an argument not found in the record. In doing so, the court seemingly ignored the city's argument that the records were exempt because they were feasibility estimates. The court began its analysis by first attempting to define the word "engineering." The court looked to the definition of a "professional engineer" under General Statutes § 20-299 (1), a licensing statute. Next, it considered the definition of the word "engineering" in Webster's Third New International Dictionary and in the 1828 charter of the British Institute of Civil Engineers.

The court then deduced that the types of professional engineering services that a qualified person may render under the licensing statute—namely the planning, design or supervision of construction—are identical to those services requested by the city in the RFP. The court concluded that, although the RFP does not require the successful construction manager to be a licensed engineer, the responses to the RFP are the work of engineers and are, therefore, engineering documents within the meaning of § 1-19 (b) (7).

The commission did not address, as the trial court did, whether the responses to the RFP were the work product of a professional engineer because there was no need to do so. Although the trial court might well have reached a conclusion different from that reached by the commission, the limited scope of review set forth in § 4-183 (j), and expressed by our appellate courts, does not allow that result. Here, the trial court improperly traveled a different path rather than determining whether the commission properly trod on the stepping stones of the path it took. After a complete and thorough reading of the record, we conclude that there is substantial evidence in the record to support the commission's decision that the responses to the RFP are not exempt from disclosure under § 1-19 (b) (7). In light of this evidence, the commission did not act unreasonably, arbitrarily or illegally. The commission's conclusion must stand because it resulted from a correct application of the law to the facts found and reasonably and logically followed from such facts.

## II

## THE CROSS APPEAL

In the cross appeal, the city claims that the trial court improperly failed to rule that the responses to the RFP and the evaluations were exempt from disclosure by virtue of certain provisions of the Hartford city charter.

The city argues that the provisions of the act requiring disclosure of public records are subordinate to other state statutes that authorize an agency not to disclose information that otherwise might be subject to the act. The city's claim is premised on its assertion that the Hartford city charter[6] is a special act of the legislature and, thus, a state statute within the meaning of § 1-19 (a).[7]

Even if we assume, arguendo, that the Hartford city charter is a state statute within the meaning of § 1-19 (a), there is still no support for the city's argument that the charter exempts the responses to the RFP from disclosure. The city concedes that "the city's charter does not specifically state that proposals submitted in response to, or evaluations made in the context of an RFP must be kept from public view until a decision is made whether to enter into a contract with any respondent." It also concedes that neither "the city's charter nor the Hartford municipal code makes any reference to an RFP process."

Nevertheless, the city argues that the RFP process is synonymous with competitive bidding, and, therefore, the charter permits the nondisclosure of RFP records. The city attempts to bolster its argument that the RFP process is analogous to competitive bidding by citing three unpublished opinions of the Superior Court.[8] We are unable to consider these cases, however,

---

[6] The city relies on chapter VIII, § 10, of the Hartford city charter, which provides in part that "[b]efore making any purchase . . . the city purchasing agent shall give opportunity for competitive bidding under such rules and regulations as the council shall prescribe by ordinance."

[7] General Statutes § 1-19 (a) provides in pertinent part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records promptly . . . ."

[8] The three cases relied on by the city are: *Community Associates, Inc.* v. *New Haven*, Superior Court, judicial district of New Haven, Docket No. 322289 (October 1, 1991); *Dattco, Inc.* v. *Middletown Transit District*, Superior Court, judicial district of Middlesex, Docket No. 64776 (June 3, 1992);

because of the city's failure to comply with Practice Book § 294.[9] In fact, an RFP and a competitive bid are different and must be treated differently. See *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 812, 660 A.2d 810 (1995) (*Borden, J.*, dissenting).

Even if we were to equate an RFP to a competitive bid, however, the city charter does not support the city's position that the responses to the RFP must be kept secret until the contract is awarded. After competitive bids are opened, chapter VIII, § 10, of the charter provides in part that "[a]ll record of all bids showing the name of the bidders and amounts of bids indicating in each case the successful bidder, together with the originals of all sealed bids and other documents pertaining to the award of contracts, shall be preserved for not less than six (6) years in a file which shall be open to public inspection. . . ." Thus, once the bids are opened, the documents are available to the public for inspection. If statutory language is clear and unambiguous, its meaning is not subject to construction. *Cilley* v. *Lamphere*, 206 Conn. 6, 9–10, 535 A.2d 1305 (1988).

Moreover, absent a compelling need for secrecy, we will not look with favor on nondisclosure of records. The city argues that it is necessary that the bidding be conducted in a confidential manner until the selection process is complete because prospective contractors that would otherwise be required to divulge propriety information to respond properly to an RFP "may well choose not to compete and those that do compete

and *Appleby & Cutone, Inc.* v. *Chester*, Superior Court, judicial district of Middlesex, Docket No. 67384 (December 13, 1993).

[9] Practice Book § 294 provides: "An opinion which is not officially published may be cited before a court only if the person making reference to it provides the court and opposing parties with copies of the opinion."

Because unpublished decisions are not readily available to all practitioners, we require compliance with § 294 in order to ensure fairness.

would only offer that which would be absolutely necessary to beat the competitors known position." The record fails to disclose any such evidence. Further, we consider it no less likely that a competitor, once it becomes aware of what amount the other applicants intend to charge for the management service, to lower its own price in order to obtain the contract. It seems just as likely that the city may be in a more favored position by disclosure. Balancing the effect that nondisclosure has on the public with the city's arguments against disclosure, even assuming a competitive bid status existed, we decline to adopt the city's position.

On the named defendant's appeal, the judgment sustaining the city's appeal to the trial court is reversed and the case is remanded with direction to render judgment denying the city's appeal. On the city's cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.