[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action in two counts, alleging in the first violation of Connecticut's Anti-Trust Act, Connecticut General Statute § 35-24, et seq. and in the second erosion of the integrity of the competitive bidding process and illegal favoritism in the awarding of a lease of the Meriden-Markham Airport.
The plaintiff Interstate Aviation, Inc., is engaged in the aviation business as the owner of an airport in Plainville, Connecticut and is an unsuccessful bidder for the subject lease. The defendant City of Meriden is the municipality that owns the airport; the individual defendants are officials of the City of Meriden, and the defendant Johnnycake Aviation Services, Inc., CT Page 2587-A now known as Meriden Aviation Services, Inc., is the successful bidder for the subject lease.
The facts are as follows:
The City initiated the process of leasing its airport to a new tenant by its City Council adopting a resolution on May 16, 1988 concerning "negotiations for leasing of the airport" and referring the matter to its Finance Committee. After that Committee reported back, the Council adopted a resolution on February 6, 1989 that "There be issued Requests for Proposals," and "Requests for Qualifications also be issued". On July 21, 1989 the Purchasing Agent prepared a package of materials, to be sent or made available to prospective lessees, entitled:
"Legal Notice
Invitation to Bid
The City of Meriden is accepting sealed bids for:
Lease for Fixed-Base Operator at Meriden-Markham Airport
Meriden Aviation Commission"
The first page reads "Bids shall be submitted on forms and CT Page 2587-B manner specified;" they will be accepted until August 8, 1989 when they will be publicly opened and read; each bid to be accompanied by a certified check in bid bond in the amount of 5% of the amount bid; and "The right is reserved to reject any or all bids, in whole or in part, to award any item, group of items, or total bid, and to waive informality or technical defects, if it is deemed to be in the best interest of the City of Meriden."
A letter in the package, signed by the Purchasing Agent, reads:
 "Dear Bidder: The attached Legal Notice is being sent to induce you to visit, write or call for the forms and specifications mentioned within the Invitation to Bid."
Another paper, addressed to "all prospective bidders," reads:
 "The Office of Purchasing Agent will appreciate your assistance in making a careful study of the specifications and proposal for the purposes of offering suggestions as to the contract period, quantities, purchasing terms, detailed specifications, trade customs, etc, which you believe to be for the best interest of the City of Meriden."
Another paper in the package, under paragraph heading CT Page 2587-C "Invitation to Bid," provides: "Pursuant to provisions of the Charter of the City of Meriden, Connecticut sealed proposals will be received by the Purchasing Agent . . . ." Under paragraph heading "Affirmation of Bidder" it provides: "The undersigned bidders affirm and declares:
 1) That this proposal is executed and signed by said bidder with full knowledge and acceptance of the provisions of the . . . proposal schedule, and special bid, and contract terms and conditions, . . . .
 2) That should any part of this proposal be accepted . . . said bidder will furnish and deliver the . . . services for which this proposal is made, . . . .
 3) That this proposal is covered by surety in the following form as checked: Under paragraph heading "Proposal," the paper reads: "The undersigned accepting
the conditions set forth herein, hereby agrees . . . to furnish and deliver the . . . services to the city agency . . . in theproposal schedule at the price bid thereon." (Underlining as in the original).
In the package a paper entitled "Non-Collusive Bid Statement" provides: "(1) The bid has been arrived at by the bidder CT Page 2587-D independently and has been submitted without collusion . . .; (2) The contents of the bid have not been communicated by the bidder . . . and will not be communicated to any such person prior to the official opening of the bid."
In the package a paper entitled "General Instructions and Conditions" provides under paragraph heading "1. Proposals:" "Proposals are to be submitted in duplicate on the attached proposal forms . . . .
"Amendments to . . . bids received later than the time and date set for the bid opening will not be considered."
That paper under paragraph heading "4. Award" provides: "The purchasing Agent reserves the right to make an award on the bid which, by the agent's judgment and recommendation from the Meriden Aviation Commission and the City Council following bid evaluations best meets the specifications and is deemed to be in the best interest of the City of Meriden.
"The Purchasing Agent, upon the recommendation from the Meriden Aviation Commission and the City Council further reserve the right to reject any or all bids, in whole or in part . . . to waive informality or technical defects, if, in their judgment, the best interests of the City of Meriden will be served." CT Page 2587-E
In the package, a paper entitled "Supplemental Information and General Conditions" provides:
"LEASE
The attached lease . . . generally sets forth the mutual requirement [sic] and expectations of the lessor and lessee, but does not preclude a certain amount of modification and revision by mutual consent prior to signing.
METHOD OF AWARD:
Bidders are specifically advised that while the price offered on the lease for the Fixed Base operator is important, it will not be the sole factor considered in the selection of the lessee.
A Committee of City officials will select one or more bidders for evaluation and will require them to appear before them for interviews, at which time bidders will present their qualifications, prior experiences, plans for implementation of the required services and evidence of their ability to perform the lease requirements.
After their interview the panel will evaluate and in its sole CT Page 2587-F discretion recommend for award the bidder who will best serve the interests of the City of Meriden."
In the package, another paper, entitled "Statement of Proposer's Qualifications," requests information as to names and addresses of prior fixed base operations of the proposer, and lists of professional and bank references.
In the package another paper entitled:
"PROPOSAL
Lease for Fixed-Base Operator at Meriden-Markham Airport",
 provides: "The undersigned . . . submits herewith . . . the following proposal:
1. Price per month for the first year
 ___________________ $ __________________" written figures dollars and cents
It continues with a price per month for the second through the tenth year.
In the package is the proposed lease agreement, stating a CT Page 2587-G description of the property being leased, a term of the ten year, a fuel fee of $0.05 per gallon of aviation fuel delivered to the lessee; a payment to the City of 30% of revenue received by the lessee from the tie-down and hangarage fees; minimum services to be performed by lessee, and provisions relating to maintenance, snow plowing, security, insurance and other typical terms of such a lease.
The package contains a last group of pages entitled "Instructions to Proposers" reiterating many of the provisions alluded to above, including the right of the City to reject any or all proposals or quotations.
An addendum to the bid/proposal package changed the bid opening date from August 8, 1989 to August 11, 1989, and changed some provisions m the proposed lease.
Legal notice was published in the Meriden Record-Journal under the heading:
"INVITATION TO BID
 The City of Meriden is accepting sealed bids for Lease for Fixed Base Operator at Meriden-Markham Airport".
A notice the City had published in the "Wall Street Journal" CT Page 2587-H and "Trade-a-Plane" read:
"FBO WANTED
 The City of Meriden is accepting sealed proposals for full service FBO at Meriden-Markham Municipal Airport. . . ."
Prospective lessees, on request to the Meriden purchasing department, were given tours of the public portions of the airport. The court finds the plaintiff was not denied access.
The following five entities responded to the City's invitation: plaintiff Interstate Aviation, Inc., defendant Johnnycake Aviation Services, Inc., Chester Airport, Inc., TAG Aviation and Ronald T. Boucher. All responses consisted of a paper entitled "Proposal" setting forth a rental price per month from the first through the tenth year, a statement of proposer's qualifications and a non-collusive bid statement. The ten year bid of Chester Airport, Inc. totaled $360,000 representing highest dollar amount the City would realize in revenue; that of TAG Aviation totaled $316,260 representing the second highest amount; that of plaintiff totaled $295,356 representing the third highest amount; that of Roger T. Boucher totaled $292,417 representing the fourth highest amount; and that of defendant CT Page 2587-I Johnnycake Aviation Services, Inc. totaled $276,828 representing the lowest amount.
Plaintiff's bid/proposal was offered with the stipulation that "clarification and or modification may be made but not limited to" provisions of the lease relating to its term of ten years, the requirement of a full-time manager, storage tanks, maintenance, security, runway lights, personal guaranty, perimeter fence, and insurance. Chester Airport, Inc. also requested modification of the lease proposal. Johnnycake Aviation Services, Inc.'s proposal included a plan for substantial renovation of the buildings and grounds of the airport.
All the responders were invited to make an oral presentation on their proposal to the Meriden Aviation Commission and Finance Committee of the City council on August 31, 1989. By August 28, 1989 the Purchasing Department had reviewed all the bid/proposals and suggested to the Aviation Commission and Finance Committee a matrix of 34 items they should weigh and question the proposers on.
All presenters sought variations in the terms of the proposed lease. In particular, William O'Leary, president of the plaintiff, stated he wanted the City to be the airport manager, the City to remove all fuel tanks, to provide airport security, CT Page 2587-J and include the T-hangars as part of lease: he did not want to maintain the perimeter fence or install light bulbs on the runway; he wanted to modify the requirements of the incorporation certificate, personal guaranty, and of his being a full-time manager. He also submitted a letter from his insurance agency indicating provisions of the proposed lease relating to lessee's responsibilities for unauthorized access, waiver of governmental immunity, and the hold harmless clause were "unacceptable" for insurance purposes.
The Aviation Commission met on September 19, 1989, considered all of the proposals and recommended to the Finance Committee their acceptance in the following order: defendant Johnnycake Aviation Services, plaintiff Interstate Aviation, inc., Ronald Boucher, TAG Aviation, Inc. and Chester Airport, Inc. On September 18, 1989 the Finance adopted a resolution authorizing the City Manager to enter into negotiations with Johnnycake for a lease of the airport.
Negotiations between city officials and Johnnycake continued until February 16, 1990 when a lease was finalized and executed. It differed from the proposed lease included in the bid/proposal package in the following particulars:
1. The term was fifteen years with a five year renewal option, while CT Page 2587-K the proposed lease called for ten years.
 2. The percentage of tie-down fees payable to the City was reduced from 30% to 15% and the new lease waived payment until July 1, 1990, while the proposed lease called for payment at the commencement of the term.
 3. The new lease included the City's garage and T-hangar which were excluded from the proposed lease.
 4. The new lease provided the City rather than the lessee, as in the proposed lease, would provide snow removal until April 1990.
 5. The new lease changed the "as is" provision of the proposed lease to provide that the City would make extensive repairs to the airport facilities.
 6. The new lease allowed a rental of $833.33 per month until July 1, 1990 in contrast to the minimum monthly rental of $1,750 in the proposed lease.
 7. The City returned the $10,000 deposit to Johnnycake within 18 months, while the proposed lease provided for holding the deposit for ten years.
These changes and the manner in which the new lease was CT Page 2587-L negotiated with Jonnnycake are the fundamental bases for the plaintiff claiming the defendants violated Connecticut Anti-Trust Act, § 35-29 et seq. and eroded the integrity of the competitive bidding process.
Initially, this court must deal with defendants' claim that plaintiff lacks standing to assert improper bidding procedures because plaintiff is not a resident of Meriden. Defendants made a motion to dismiss on this ground which motion was denied by Judge Marshall Berger. His decision is not only the law of this case, it is correct. Spiniello Construction Co. v. Manchester,189 Conn. 539, 543-45 (1983) clearly holds that when a complaint alleges that the competitive bidding process is tainted by favoritism, a plaintiff has standing to challenge the award even though he is a non-resident of the town.
Plaintiff alleges in its First Count that defendants violated the Connecticut Anti-Trust Act, § 35-24 et seq. That Act at § 35-26 provides: "Every contract combination or conspiracy in restraint of any part of trade or commerce is unlawful." Section 35-29
provides that "[e]very lease, sale or contract for the furnishing of services . . . shall be unlawful where the effect of such lease or sale or contract of sale . . . may substantially lessen competition . . . in any part of trade or commerce . . . "
The Connecticut Act is substantially similar to federal CT Page 2587-M antitrust laws, especially the Sherman Act, 15 U.S.C. § 1, and its interpretation is aided by reference to judicial opinions construing the federal statutes. Shea v. First Federal Savingsand Loan of New Haven, 184 Conn. 285, 303-04 (1981).
To prevail plaintiff must establish (1) a contract, combination or conspiracy, (2) that unreasonably restrains trade, (3) in intrastate or interstate commerce. Retail Service Assoc.v. Conagra Pet Products, 759 F. Sup. 976, 979 (D. Conn. 1991).
The elements of a conspiracy are "(1) a combination between two or more persons. (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which results in damages to the plaintiff. "Williams v. Maislen, 116 Conn. 433, 437 (1933), quoted in Marshuk v. Marshuk, 226 Conn. 652, 665 (1993).
As applied to antitrust laws, a conspiracy to restrain trade entails two components:
(1) proof of a concerted action deliberately entered into with the specific intent to achieve an unlawful restrain of trade, and (2) the commission of an overt act in furtherance of the conspiracy. Broadcast Music v. Hearst/ABC Viacom Ent. Services,
CT Page 2587-N746 F. Sup. 320, 327 (S. D. N.Y. 1990).
Plaintiff's evidence of a conspiracy among the defendants consists of one Norm Gavin informing Frank Gallagher of Johnnycake about the opportunity for bidding for the FBO position at Meriden-Markham Airport; defendant John D. Quinn, a member of the Finance Committee, visiting Johnnycake to observe its operation; Gavin, Gallagher and Quinn seen conferring at Johnnycake; and after Johnnycake started at the Meriden-Markham Airport, it subleasing some land to Gavin to build a hangar.
This court finds that evidence does not prove a concerted action among the defendants to arrange unlawfully the lease to Johnnycake. Moreover, no evidence was adduced of a specific intent to achieve an unlawful restraint of trade, nor that competition was substantially lessened by the acts of the defendants. Thus, plaintiff's First Count claiming a violation of Connecticut's Anti-Trust Act must fail.
The plaintiff's Second Count alleges improprieties in the bidding process which eroded its integrity and unlawfully favored Johnnycake. The basis of this claim is that the lease ultimately negotiated with Johnnycake substantially differed from the proposed lease contained in the original bid/proposal distributed to prospective lessees. CT Page 2587-O
It is well settled that "[m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit taxpayers, not the bidders; they should be construed to accomplish those purposes fairly and reasonably with sole references to the public interest." John J.Brennan Construction Corporation, Inc. v. Shelton, 187 Conn. 695,702 (1982); 10 McQuillan, Municipal Corporation (3rd Ed. Rev.) § 29.29. It is also recognized that where a municipality reserves the right to reject any and all bids, as the City did here, no bidder can claim any contractual rights until he has been awarded the contract. 10 McQuillan, supra, § 29.77. However, even though the City reserved that right, it cannot deviate from its bidding instructions in making the award so as to erode the integrity of the process. Spinella Construction Co.v. Manchester, supra 189 Conn. at 544-45.
In the instant case, the issue of plaintiff's claim of illegal bid rigging depends entirely on whether the bidding procedure was by way of invitation to bid or request for proposals. All parties conceded in their briefs and oral argument that is the nub of this case.
For state purchasing, § 4a-50 defines "competitive CT Page 2587-P bidding" as meaning "the submission of prices by persons, firms or corporations competing for a contract to provide supplies, . . . services, under a procedure in which the contracting authority does not negotiate prices:" It defines "competitive negotiations" as meaning "a procedure for contracting for supplies, . . . services in which (1) proposals are solicited from qualified suppliers by a request for proposals and (2) changes may be negotiated in proposals and prices after being submitted."
This distinction is applied in the municipal procurement process. Typically, an invitation to bid defines the scope of the work required by detailed plans and specifications, and the award is made on the basis of the lowest price bid. City of Hartford v.Freedom of Information Commission, 41 Conn. App. 67, 70, fn. 3. (1996). A request for proposals identifies a problem, requests a solution, and the award is based on technical expertise as well as cost. Id.
This court concludes the procedure adopted by the City was a request for proposals on the basis of the following:
1. The City Council adopted a resolution that the lease be obtained by "Requests for Proposals."
2. The bid/proposal package distributed to prospective CT Page 2587-Q lessees contains language relating to both an invitation to bid and request for proposals. The evidence was that it was cobbled together by the purchasing department from forms of both procedures. The words "bid" and "proposal" appear about an equal number of times. But the following provisions indicate the intent to request proposals:
a. The paper addressed to all bidders appreciating their assistance in "offering suggestions" as to the terms of the lease which they believe for the best interest of the City.
b. The paper under paragraph heading "4. Award" providing: "The Purchasing Agent reserves the right to make an award on the bid which by the Agent's judgment and recommendation from the Meriden Aviation Commission and the City Council following bid evaluations best meets the specifications and is deemed to be in the best interest of the City of Meriden."
c. The paper entitled "Supplementary Information and General Conditions" providing:
"LEASE:
The attached lease . . . generally sets forth the mutual requirement and expectations of the lessor and lessee, but doesnot preclude a certain amount of modification and revision byCT Page 2587-Rmutual consent prior to signing. (underlining added)
"METHOD OF AWARD:
 Builders are specifically advised that while the price offered on the lease for the Fixed-Base operator is important, it will not be the sole factor considered in the selection of the lessee. (underlining added)
 A Committee of City officials will select one or more bidders for evaluation and will require them to appear before them for interviews, at which time bidders will present their qualifications, prior experiences, plans for implementation of the required services and evidence of their ability to perform the lease requirements.
 After their interview the panel will evaluate and in its sole discretion recommend for award the bidder who will best serve the interests of the City of Meriden." (underlining added)
3. The City officials involved in the procurement, including the purchasing agent, chairman of the Meriden Aviation Commission, and a member of the Finance Committee of the City Council, all knew the difference between an invitation to bid and request for proposals and all testified the procedure adopted by the City was by way of request for proposals. The purchasing CT Page 2587-S department instructed the Aviation Commission and Finance Committee on a matrix of 34 items they were to consider in evaluating the proposers, which clearly was not limited to price only.
4. The plaintiff itself submitted a proposal which asked for clarification or modification of the terms of the proposed lease, implying the necessity for further negotiations.
5. All the prospective lessees participated in presentations before the Aviation Commission and Finance Committee in which inquiries went beyond the amount of rent on the proposed lease and in which all, including plaintiff, sought variations in the terms of that lease. This reveals all proposers understood further negotiations in the terms of the lease would follow.
Having determined the process was by way of request for proposals, this court concludes the City proceeded properly to choose Johnnycake on the basis of its overall qualifications and particularly its commitment to put a substantial amount into improving the airport, and to negotiate a lease with Johnnycake which differed from the original proposed lease but best served the interests of the City.
Thus the plaintiff failed to establish its Second Count of CT Page 2587-T improprieties in the bidding process.
A further ground for holding for the defendant City is that when, as here, it had considerable discretion in the request for proposals process, it was entitled to governmental immunity. Connecticut General Statute § 52-557n(a)(2)(B). Gauvin v. New Haven,187 Conn. 180, 184 (1982).
Judgment, accordingly, may enter in favor of the defendants.
Robert Satter State Judge Referee