CITY OF NEW HAVEN ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(13144)
(13145)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued November 13, 1987—decision released January 12, 1988

*Marianne D. Smith,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant).

*Richard F. Orr,* with whom, on the brief, was *Ben A. Solnit,* for the appellant (defendant Susan M. Stone).

*Martin S. Echter,* deputy corporation counsel, for the appellees (plaintiffs).

CALLAHAN, J. These are consolidated appeals by the defendants, the freedom of information commission (hereinafter commission) and Susan Stone, from a judgment of the Superior Court, *Schaller, J.,* that reversed, in part, the final order of the commission. The final order required the city of New Haven to provide Susan Stone "with copies of invoices for services rendered by the law firm of Beveridge and Diamond and by any other law firm or attorney retained for the purpose of litigating claims pertaining to the East Shore wastewater treatment plant." The two issues raised in these appeals are (1) whether the trial court exceeded the permissible scope of judicial review of the final order of the commission, and, if not, (2) whether invoices that bear only the name of the firm and the amount billed from law firms that rendered legal services to the city of New Haven in connection with the East Shore wastewater treatment plant are exempt from disclosure under Connecticut's Freedom of Information Act as "records pertaining to strategy and negotiations" under General Statutes § 1-19 (b) (4).

The underlying facts are not in dispute. In the mid-1970s the named plaintiff, the city of New Haven, entered into a series of contracts for the construction of the East Shore wastewater treatment plant. When the construction of the plant had been substantially completed in 1982, the city took possession of it and began operations. The plant did not function properly and shortly thereafter the city entered into a series of

arbitrations with the general contractor. Upon the unfavorable termination of the arbitration proceedings, the city brought separate federal actions against Camp, Dresser and McKee, Inc., the consulting engineer of the project, and Zimpro, Inc., a chief supplier of component parts.

In February, 1986, Stone sent a letter to the public information/public advocacy office of the city and town of New Haven, and in accordance with General Statutes § 1-19 (a)[1] requested the following: "As the result of constructing the East Shore sewage treatment plant, the City of New Haven has been, and continues to be, involved in legal proceedings relating to the construction of that facility. I hereby request that you provide copies of all invoices from any attorney or law firm retained or consulted by the city in conjunction with any legal proceeding, whether an arbitration or litigation, connected with the construction of that facility. This request includes, but is not limited to, invoices from the law firm of Beveridge and Diamond." The letter went on specifically to limit the information requested to only the name of the attorney or law firm submitting the invoice, and the total amount of the invoice. The city did not respond to Stone's letter, whereupon she filed a letter of complaint with the commission pursuant to General Statutes § 1-21i (b).[2] At

[1] General Statutes § 1-19 (a) provides in pertinent part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. . . ."

[2] General Statutes § 1-21i (b) provides in pertinent part: "DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. . . .

the time Stone sent the letter of request to the city, she was employed as an associate with the law firm which has been representing Zimpro, Inc., in the federal actions filed by the city and which represents her in connection with the present appeal.

At the administrative hearing conducted by Commissioner E. Bartlett Barnes as the hearing officer, the city argued that the information was exempt from disclosure as: (1) attorney-client communications within General Statutes § 1-19 (b) (10);[3] (2) attorney work product; and (3) records pertaining to strategy and negotiations with respect to pending claims and litigation under General Statutes § 1-19 (b) (4).[4] Barnes rejected all of the city's arguments and in a proposed written decision he found that the city had violated General Statutes §§ 1-15[5] and 1-19 (a) by refusing to dis-

"(b) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial, except in the case of an unnoticed or secret meeting, in which case the appeal shall be filed within thirty days after the person filing the appeal receives notice in fact that such meeting was held. For purposes of this subsection, such notice of appeal shall be deemed to be filed on the date it is received by said commission or on the date it is postmarked, if received more than thirty days after the date of the denial from which such appeal is taken. . . ."

[3] General Statutes § 1-19 (b) (10) provides: "(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (10) records, tax returns, reports and statements exempted by federal law or state statutes or communications privileged by the attorney-client relationship."

[4] General Statutes § 1-19 (b) (4) provides: "(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (4) records pertaining to strategy and negotiations with respect to pending claims and litigation to which the public agency is a party until such litigation or claim has been finally adjudicated or otherwise settled."

[5] General Statutes § 1-15 provides in pertinent part: "APPLICATION FOR COPIES OF PUBLIC RECORDS. CERTIFIED COPIES. FEES. Any person apply-

close the invoices. The freedom of information commission adopted Barnes' findings and conclusions and issued a "Notice of Final Decision" that ordered the city to provide Stone with the requested information from the invoices.

The city and the public information/public advocacy office of the city and town of New Haven took timely appeals from the final order of the commission pursuant to General Statutes §§ 1-21i (d)[6] and 4-183 (a).[7] The trial court, *Schaller, J.*, held that, while the requested invoices are not exempt from disclosure

---

ing in writing shall receive, promptly upon request, a plain or certified copy of any public record. . . ."

[6] General Statutes § 1-21i (d) provides: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. Notwithstanding the provisions of section 3-125, legal counsel employed or retained by said commission shall represent said commission in all such appeals and in any other litigation affecting said commission. Notwithstanding the provisions of subsection (b) of section 4-183 and section 52-64, all process shall be served upon said commission at its office. Any appeal taken pursuant to this section shall be privileged in respect to its assignment for trial over all other actions except writs of habeas corpus and actions brought by or on behalf of the state, including informations on the relation of private individuals. Nothing in this section shall deprive any party of any rights he may have had at common law prior to January 1, 1958. If the court finds that any appeal taken pursuant to this section or section 4-183 is frivolous or taken solely for the purpose of delay, it shall order the party responsible therefor to pay to the party injured by such frivolous or dilatory appeal costs or attorney's fees of not more than one thousand dollars. Such order shall be in addition to any other remedy or disciplinary action required or permitted by statute or by rules of court."

[7] General Statutes § 4-183 (a) provides: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or

as attorney-client communications or attorney work product, they are exempt from disclosure as "records pertaining to strategy and negotiations" under General Statutes § 1-19 (b) (4). The trial court found: "The plaintiff[s] [are] correct in stating that access to the requested information would allow [the city's] adversaries to 'balance the amounts spent, the rate of expenditure and the course and posture of litigation proceedings against the amount of exposure in damages supported by the evidence revealed in discovery.' This process would result in a 'highly informed judgment about the negotiating posture and strategy of the City.' That type of advantage is what the exemption under section 1-19 (b) (4) was designed to prevent." The trial court also balanced the public's interest in its right to know against the need for confidentiality during the pendency of litigation and held that "the public interest is best served by preventing the public's legal adversaries from obtaining an advantage in the ongoing litigations." Accordingly, the trial court sustained the plaintiffs' appeals and reversed the final decision of the commission.

The appeals of the commission and Stone from the decision of the trial court were transferred to this court pursuant to Practice Book § 4023. The defendants argue that the trial court erred in reversing the final decision of the commission because it (1) exceeded the permissible scope of judicial review and (2) expanded the narrow scope of the exemption under § 1-19 (b) (4) by holding that the invoices requested pertained to strategy and negotiations. We find error.

The defendants first argue that the trial court exceeded the scope of judicial review as set forth in

jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

General Statutes § 4-183. Specifically, they argue that the commission's decision was supported by substantial and competent evidence on the record as a whole, and thus, the trial court impermissibly substituted its judgment for that of the commission as to a question of fact. The city, however, argues that the trial court properly concluded that the commission's decision was affected by an error in statutory interpretation which is a question of law and a matter for the courts.

" 'Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. *Lawrence* v. *Kozlowski,* 171 Conn. 705, [707–708,] 372 A.2d 110 (1976) [cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977)]. Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant.' *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 176 Conn. 11, 12, 404 A.2d 864 (1978); *DiBenedetto* v. *Commissioner of Motor Vehicles,* 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 (g). 'The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion.' *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 441, 423 A.2d 87 (1979); see also *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983)." *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986).

In reversing the final decision of the commission, the trial court found that the decision was affected by an error of law in that the commission misinterpreted § 1-19 (b) (4). Ordinarily, the construction and interpretation of a statute is a question of law for the courts where the administrative decision is not entitled to spe-

cial deference, particularly where, as here, the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations. *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987); see also *Board of Education* v. *Board of Labor Relations,* 201 Conn. 685, 698–99, 519 A.2d 41 (1986); *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 342–43, 435 A.2d 353 (1980). Nevertheless, " '[j]udicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, *in light of the evidence,* the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion.' " (Emphasis added.) *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Burnham* v. *Administrator,* supra, 322. Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. *Finkenstein* v. *Administrator,* 192 Conn. 104, 112–13, 470 A.2d 1196 (1984); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 5, 434 A.2d 293 (1980).

While the trial court here properly balanced the competing interests as intended by the legislature when applying the exemption under § 1-19 (b) (4), the trial court improperly substituted its own conclusion for the commission's by applying the law to facts not reasonably supported by the record. The limited record before the trial court consisted of the following: (a) the eight page transcript of the administrative hearing before the hearing officer; (b) the three trial briefs of the parties; (c) the exhibits before the hearing officer; and

(d) the oral arguments of counsel. This record fails to contain any evidence from which one could reasonably conclude that the invoices in question pertained to or, as "pertain" is defined in Webster's Third New International Dictionary, had any "connection with or relation to" either strategy or negotiations in the pending lawsuits. The only references to such a connection were made by the plaintiffs' attorney in arguments before the hearing officer, in their trial and appellate briefs, and before the trial court and this court at oral arguments. Arguments, however, are not evidence upon which findings can be based.

The city argues: "Strong evidence that the information requested has potential value to Zimpro . . . in countering the City's strategy and negotiations is the very fact that the request comes from the attorneys representing Zimpro." We are unpersuaded. It is undisputed that Stone has been a member of the law firm representing Zimpro, Inc., in the city's suit against Zimpro, Inc. While this fact raises questions and eyebrows regarding the motives behind Stone's request for the invoices, we do not find it, *in and of itself,* to be sufficient evidence to demonstrate that the requested invoices in fact "pertain to" strategy and negotiations in the pending litigations. To draw a conclusion either way from this single fact would be nothing more than speculation and conjecture.

We note that the general rule under the Freedom of Information Act is disclosure with the exceptions to this rule being narrowly construed. The burden of establishing the applicability of an exemption clearly rests upon the party claiming the exemption. See *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 431, 518 A.2d 49 (1986); *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984); *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 188, 470 A.2d

1209 (1984); *Wilson* v. *Freedom of Information Commission,* 328–29, 341; see also *State* v. *Januszewski,* 182 Conn. 142, 170–71, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). This burden requires the claimant of the exemption to provide more than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested. See *Wilson* v. *Freedom of Information Commission,* supra, 341; *New Haven* v. *Freedom of Information Commission,* 4 Conn. App. 216, 219–21, 493 A.2d 283 (1985); see also *Lykins* v. *United States Department of Justice,* 725 F.2d 1455, 1463 (D.C. Cir. 1984), on remand sub nom. *Lykins* v. *Assistant Attorney General Rose,* 608 F. Sup. 693 (D.D.C. 1984); *Yeager* v. *Drug Enforcement Administration,* 678 F.2d 315, 320 (D.C. Cir. 1982); *Coastal States Gas Corporation* v. *Department of Energy,* 617 F.2d 854, 861 (D.C. Cir. 1980); *Church of Scientology* v. *United States Department of Defense,* 611 F.2d 738, 742 (9th Cir. 1980); *Mead Data Central, Inc.* v. *United States Department of Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977).[8]

It is clear from the trial court's memorandum of decision that its conclusion that the invoices in question pertained to strategy and negotiations was founded primarily upon the arguments of the plaintiffs' counsel set forth in the plaintiffs' pretrial brief. As previously stated, unsupported conclusory allegations of counsel are not evidence and are insufficent for the application of an exemption from disclosure. Neither the adminis-

---

[8] It is appropriate to look to federal case law interpreting the federal Freedom of Information Act; 5 U.S.C. § 552 et seq.; for guidance because the purposes of the federal act and of Connecticut's act are virtually identical. See *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 553, 436 A.2d 266 (1980), and authorities cited therein.

trative record nor the record on appeal before this court contains any evidence, either by way of expert testimony, testimony of a city representative, a relatively specific affidavit, a transcript of deposition testimony, or precedent, to support the court's conclusion that the invoices in question pertain to strategy and negotiations in the pending litigations. The transcript before the hearing officer consists of eight pages of arguments and dialogue between the hearing officer and the attorneys for the parties. No testimony was taken nor were any exhibits presented that provided a premise for a correlation between the invoices and strategy and negotiations.[9]

Under these circumstances, therefore, the trial court impermissibly substituted its judgment for that of the commission without a factual basis for doing so. Accordingly, we hold that the trial court erred in applying its interpretation of § 1-19 (b) (4) to thwart disclosure when there were no facts in the record to support such an application of the statute.

We note that our decision does not reach the substantive merits of the plaintiffs' exemption claim under § 1-19 (b) (4). We need not, nor can we decide, on the basis of the state of the record before this court, whether invoices for legal services that bear only the

---

[9] The following is a list of exhibits submitted at the administrative hearing, none of which is relevant to the substantive merits of the claimed exemption under General Statutes § 1-19 (b) (4):

"Plaintiff's Exhibit A: Complaint letter dated February 18, 1986, from Susan M. Stone to Chairwoman Judith A. Lahey.

"Plaintiff's Exhibit B: Letter dated February 24, 1986, from Marianne D. Smith, Commission Counsel, to Susan M. Stone.

"Plaintiff's Exhibit C: Letter dated February 27, 1986, from Susan M. Stone to Marianne D. Smith.

"Plaintiff's Exhibit D: Letter dated February 10, 1986, from Susan M. Stone to William O'Sullivan.

"Respondent's Exhibit 1: Complaint dated June 1, 1984, from Louis R. Pepe to the United States District Court for the District of Connecticut."

name of the attorney or law firm and the amount of the billing might, under other circumstances, pertain to strategy and negotiations in pending litigation. While the commission may have erroneously reasoned that such invoices never pertain to strategy and negotiations, it correctly concluded that the city failed to demonstrate that the requested records are exempt from disclosure under any state or federal statute. Where, as here, one of the stated reasons is sufficient to support the action of the commission, then that action should be sustained by the court. See *Burnham* v. *Planning & Zoning Commission*, 189 Conn. 261, 265, 455 A.2d 339 (1983); *Goldberg* v. *Zoning Commission*, 173 Conn. 23, 25, 376 A.2d 385 (1977). Accordingly, we hold that the commission's order of disclosure was proper because the city failed to establish on the record that the requested information falls within any exemption under the Freedom of Information Act. See *Hartford* v. *Freedom of Information Commission*, supra, 435.

There is error, the judgment is set aside and the case is remanded with direction that judgment be rendered dismissing the plaintiffs' appeals.

In this opinion the other justices concurred.