[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Department of Public Utilities, City of Norwich (Norwich) appeals from a Freedom of Information Commission (FOIC) order requiring the disclosure of a document. The document in issue is an exhibit to a gas supply contract dated August 1, 1996, between Norwich and the Tribal Utility Authority of the Mashantucket Pequot Tribe (Utility Authority). Joseph J. Cassidy, Esq., who requested the document and complained to the FOIC, is also a party to this appeal. Mr. Cassidy is the attorney for Yankee Gas Service Company, which is a competitor of Norwich in the gas supply business. This appeal is brought pursuant to General Statutes § 1-21i(d) of the Freedom of Information Act (FOIA), General Statutes §§ 1-7 through 1-211 and General Statutes § 4-183 of the Uniform Administrative Procedure Act (UAPA), §§ 4-166 through 4-189. For the reasons set forth below, the appeal is dismissed.
Norwich is a public agency within the meaning of General Statutes § 1-18a(a) of the FOIA.
Cassidy by letter of November 7, 1996, requested of Norwich copies of three agreements including the Transportation Standby and Balancing Agreement (agreement) between Norwich and the Utility Authority. Norwich, by letter of November 13, 1996, indicated that the agreement would be provided except for "Exhibit 1" which Norwich claimed to be exempt from disclosure under General Statutes § 1-19 (b)(5).[1]
Cassidy by letter of November 22, 1996, complained to the FOIC of the denial of the requested document (Exhibit 1). The CT Page 7590 FOIC pursuant to § 1-19 heard this dispute as a contested case April 14, 1997.
In its decision the FOIC found that Norwich failed to prove that Exhibit 1 to the agreement constitutes a trade secret under § 1-19 (b)(5) and that it was exempt as a feasibility study or evaluation under § 1-19 (b)(7).
The subordinate facts in this case are not substantially in dispute. Yankee Gas had been the gas supplier for the Mashantucket Pequot Tribe (the tribe). Norwich entered into a contract with the tribe for supplying gas over a ten-year period. In order to effectuate the contract, Norwich would construct a gas pipeline to the tribal facility. The terms of the arrangement between Norwich and the Mashantucket Pequot Tribe are set forth in the August 1, 1996 agreement. (Return of Record (ROR), Item 5 Ex.C.)
The exhibit at issue is a 15-20 page cost of service study which measures Norwich's marginal or incremental costs. The cost of service study reflects a specific formula to allocate costs to deliver volume of product at a determined rate. Thus, the contract price of $0.75 per/MCF (cubic feet of gas) is adjusted based on volume. (ROR, Item 5, Ex. C, p. 15.)
The exhibit was produced by a consultant. It consists of a cost of service study obtained by Norwich for several thousands of dollars. (ROR, Item 9, p. 24.) The exhibit is not directly available to the public. (ROR, Item 9, p. 25.) It reflects a specific formula which allocates costs to deliver a volume of product within a rate determined. (ROR, Item 9, p. 22.) Norwich is not regulated by the Connecticut Department of Public Utility Control (Connecticut DPUC) and is not required by statute to file such information. (ROR, Item 9, pp. 8, 10-11, 14, 20.) Although it is a public agency, Norwich exists in a competitive environment and competes with Yankee Gas for the commercial business of supplying gas to the Mashantucket tribe. The Connecticut DPUC routinely treats cost of service studies as confidential information.
In its final decision dated July 9, 1997, and mailed July 23, 1997, the FOIC ordered the disclosure of "Exhibit 1." Norwich is aggrieved by such decision. Norwich appealed the decision on August 26, 1997. The answer and record were filed on February 23, 1997. Briefs were filed by Norwich on January 22, 1998, Cassidy, CT Page 7591 on February 23, 1998, and the FOIC, on February 25, 1998. The parties were heard in oral argument on May 19, 1998.
Sections 1-19 (b)(5) and 1-19 (b)(7) as exceptions to the general FOIA principle of disclosure are to be narrowly construed. New Haven v. FOIC, 205 Conn. 767, 774 (1998);Perkins v. FOIC, 228 Conn. 158, 167 (1993). To prevail on its claim that these exemptions apply, the plaintiff must meet the burden of proof to establish its applicability. Superintendent of Police v.FOIC, 222 Conn. 621, 626 (1992); Ottochian v. FOIC,221 Conn. 393, 397 (1992).
The FOIC refers to the plaintiff's failure to prove the application of the exemptions. The court is required to defer to the facts found by the FOIC. Dufraine v. Commission on HumanRights Opportunities, 236 Conn. 250, 259 (1996); Newtown v.Keeney, 234 Conn. 312, 319-20 (1995). "Here, however, the subordinate facts. . . are not in dispute. Rather, it is the meaning of the statute that is disputed. The determination of the meaning of a statute is within the province of the trial court. . . ." Furhman v. Freedom of Information Commission,243 Conn. 427, 43 (1997) citing Board of Education v. FOIC,217 Conn. 153, 158 (1991); New Haven v. FOIC, 205 Conn. 767, 773-74. The statutory exemptions at issue have not been previously subjected to judicial review. Thus the deference normally afforded an agency's statutory construction is not applicable.Connecticut Light Power v. Texas-Ohio Power Inc.,243 Conn. 635, 644 (1998); Assn. of Not-for-Profit Providers for the Agingv. Dept. of Social Services, 244 Conn. 378, 389 (1998).
Connecticut law has adopted the definition of trade secrets from the Restatement of Laws. Town Country House Home Service,Inc. v. Evans, 150 Conn. 314 (1963). The definition in Restatement, 4 Torts § 757, Comment b, provides in part:
 A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.
 Some of the factors to be considered in determining whether given information is a trade secret are (1) the extent to which the information is a trade secret outside the business; (2) the CT Page 7592 extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer to developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
Applying such criteria to the facts of this case the court finds the following. (1) Cost of service studies are routinely viewed as confidential by DPUC. (2) The agreement is available to plaintiff's personnel, the Norwich utility commissioner, the tribal personnel, and the Bureau of Indian Affairs (R. Ex. 5 p. 33). (3) No evidence of confidentiality agreements or internal controls is in the record. There is testimony that it would not generally be available to the public. (ROR, Item 9, p. 25.) (4) The cost of service study was paid for by plaintiff at a cost of thousands of dollars and is desired by a competitor Yankee Gas. (5) The cost of the consultant was incurred by the plaintiff. (6) The information is available to various members of the Mashantucket Tribe, plaintiff's employees; the Norwich Utility Commission and the Bureau of Indian Affairs.
The evidence of dissemination of the study and the absence of any confidentiality agreement or any steps taken to limit its dissemination, defeat the claim of secrecy or confidentiality essential to the definition of trade secret. The plaintiff failed to meet its burden of establishing the application of the exemption.
Similarly, the plaintiff failed to establish the applicability of the § 1-19 (b)(7)[2] exemption. The cost of service study related to a contract which was dated August 1, 1996. The cost of service study was not a feasibility estimate or evaluation when requested in November of 1996. The contractual provision for an additional cost of service study during the term of the contract would also indicate that it is not a feasibility estimate. (ROR, Item 5, Ex. C, p. 15.) The cost of service study is a cost allocation formula rather than an appraisal or engineering estimate. The supply of gas to the Mashantucket Tribe would also seem to constitute a private as opposed to the "public supply" contract referenced in § 1-19 (b)(7). CT Page 7593
The FOIC decision is affirmed and the appeal is dismissed.
McWEENY J.