[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Alan and Ebba Anderson, appeal the decision of the Department of Social Services ("DSS") which denied the medicaid application of Ebba Anderson and which denied the increase of the Community Spouse Protected Amount ("CSPA") of Alan Anderson. The plaintiffs claim that the DSS decision misapplied state policy in requiring a showing of exceptional circumstances to increase the Minimum Monthly Needs Allowance ("MMNA"). This administrative appeal is brought pursuant to General Statutes § 4-183, the Uniform Administrative Procedure Act ("UAPA").
The factual background in this matter is as follows. On July 1, 1996, the plaintiff Ebba Anderson, applied for medicaid benefits, having been institutionalized on March 10, 1995. On May 1, 1997, the plaintiffs application was denied because the plaintiff had not proven that her assets were within the medicaid asset limit of $1,600. (Uniform Policy Manual ("UPM") § 4005.10.) The combined total of the Andersons' non-exempt assets had been determined to be $367,906.81 as of the date of institutionalization. DSS had determined that the share of applicant plaintiff of the couple's non-exempt assets was $291,166.81. Additionally, DSS determined that $76,740 was the share of the community spouse, the plaintiff Alan Anderson.
By letter dated May 12, 1997, the plaintiffs requested a fair hearing in order to increase the Community Spouse Protected Amount ("CSPA"). The hearing was held on July 21, 1997 at which the plaintiffs presented evidence to support the claim that the community spouse was not being allotted income to meet his monthly needs for living expenses. In this regard. the plaintiffs offered evidence that the community spouse's monthly income of $2,379.71 was inadequate to meet Mr. Anderson's monthly rent of $2,352 at the Chatfield Rental Retirement Community in West Hartford. (Return of Record ("ROR"), pp. 22-29.) At the hearing, the fair hearing officer, Nancy Konopacke, inquired as to whether the community spouse needed a higher monthly income than the MMNA cap amount of $1,975.50 as a result of exceptional circumstances, and was informed that the high shelter expenses were not the CT Page 10840 result of an unusual circumstance. (ROR, Transcript, p. 71.)
The hearing officer found that the DSS regional office had correctly denied the July 1, 1996 application for medicaid benefits by Mrs. Anderson and Mr. Anderson's request for an increased CSPA in a notice of decision dated October 29, 1997. The hearing officer determined that the community spouse (Mr. Anderson) had not demonstrated any exceptional circumstances which would warrant additional income above the MMNA. (ROR, pp. 2-4.) This administrative appeal to the Superior Court followed.
Here, the issues raised by the plaintiffs are whether DSS met its own standards and applicable federal standards in processing the application promptly; whether the hearing officer properly followed state and federal law in determining the minimum monthly needs allowance ("MMNA") based on the standard of "exceptional circumstances resulting in significant financial duress"; and, whether the plaintiffs are entitled to attorney's fees and costs. (Plaintiffs' Brief. p. 8.)
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial "rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public UtilitiesControl, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury WaterCo. v. Public Utilities Commission, 174 Conn. 258, 260,386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587. 628 A.2d 1286 (1993);Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262,579 A.2d 505 (1990); Baerst v. State Board of Education,34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915,645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v.Commissioner of Social Services, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
A court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has CT Page 10841 acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.New Haven v. Freedom of Information Commission, 205 Conn. 767,774, 535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom of InformationCommission, 228 Conn. 158, 164-65 (1993).
The medicaid program is a "joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care. . . ." (Citation omitted.) Burinskas v. Dept. of SocialServices, 240 Conn. 141, 148 (1997). Although a state's participation is voluntary, once it has elected to participate, it must "develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance. . . ." Id. Under General Statutes § 17b-260, the commissioner of social services is authorized to take advantage of the medical assistance program provided in Title XIX of the Social Security Act, codified as 42 U.S.C. § 1396 et seq., and under § 17b-2, DSS administers the medicaid program. "The medicaid act, furthermore, requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. . . ." (Citations omitted)Ahern v. Thomas, 248 Conn. 708, 715-16 (1999).
In the present case, the plaintiffs are aggrieved by the DSS decision.
The plaintiffs' brief, dated May 7, 1998, in support of this administrative appeal, extensively relies on representations of counsel regarding the medical condition of the plaintiff, Alan Anderson, regarding the existence of exceptional circumstances, and again, on the representations of counsel as to a delay by DSS in processing the subject medicaid application. (Plaintiffs' Brief, pp. 3-8, 19-23.) The claims of delay in processing the medicaid application and the plaintiff, Alan Anderson's medical condition were never raised before DSS nor the hearing officer. It is clear that a party to an administrative proceeding is not allowed to participate in a hearing and then, on appeal, raise claims that were not asserted before the agency. Dragan v.CT Page 10842Connecticut Medical Examining Board, 223 Conn. 618, 629-31
(1992).
However, addressing the timeliness issue, the plaintiffs claim that the delay of some ten months from the time of application to the time of the DSS decision, which according to the plaintiff was due to a review of the trust by the Attorney General's office (Plaintiffs' Brief, p. 22), enured to their detriment since the plaintiff Alan Anderson was thereby delayed in spending down assets to an allowable amount to qualify for medicaid for his wife. (Plaintiffs' Brief, pp. 21-22.) Although this claim was not raised before the hearing officer, the plaintiffs' relief for that alleged failure was to request a fair hearing under UPM § 1505.35(A)-(D) for an immediate determination of eligibility and/or request an administrative hearing for the purpose of requiring DSS to comply. Once DSS has issued a decision, as in the present case, the issue of timeliness becomes moot. Additionally, here, the reason for the late processing of the plaintiffs' application was not attributable to delay on the part of DSS. Accordingly, the plaintiffs' claim concerning the delay and the DSS decision must fail.
The plaintiffs next contend that the fair hearing officer did not properly follow state and federal law in determining the Minimum Maintenance Needs Allowance ("MMNA") based on the standard of "exceptional circumstances resulting in significant financial duress." (Plaintiffs' Brief, p. 8.) The plaintiffs claim that the fair hearing officer misinterpreted the law in this regard.
The medicaid program was modified in July, 1988, by the Medicaid Catastrophic Care Act of 1988, which addressed the problem of the impoverishment of the commumty spouse of an institutionalized spouse. A minimum monthly maintenance needs allowance was established to address the income needs of the community spouse, and a community spouse resource allowance to insure that an adequate amount of the couple's resources was protected for the community spouse. See 42 U.S.C. § 1396r-5
(d)(1). In Connecticut, the MMNA is not counted in determining the institutionalized spouse's income that is to be counted to offset his nursing home or other medical costs under UPM § 1570.25.
Federal law provides the opportunity for an administrative hearing to allow the institutionalized or community spouse an CT Page 10843 opportunity to demonstrate that the resource allowance is inadequate in relation to the amount of income generated by it, to raise the community spouse's income to the minimum monthly maintenance needs allowance; or to show that the minimum monthly maintenance needs allowance must be increased due to exceptional circumstances resulting in significant financial duress. 42 U.S.C. § 396r-5 (e)(2). This federal standard is found in the Connecticut UPM, which sets forth regulations having the full force and effect of law pursuant to General Statutes §17b-10, to implement the federal law. UPM § 1570.25D, which delineates the non-administrative duties of a fair hearing official, provides, in pertinent part: "(3) the [fair hearing] official increases the MMNA of the community spouse previously determined by the Department: (a) if it is established by the the community spouse or is that the community spouse needs a higher monthly income than permitted by the MMNA calculation; and (b) if this need for a higher income is due to exceptional circumstances resulting in significant financial duress . . .
In Burinskas v. Department of Social Services, supra,240 Conn. 149-50, the Connecticut Supreme Court clarified the application of this exceptional circumstances standard and confirmed the proper regulatory procedure to be followed, stating:
 If the community spouse's income from outside sources is insufficient to meet his minimum needs allowance, the institutionalized spouse is permitted to bridge this deficit by transferring income to the community spouse. 42 U.S.C. § 1396r-5
(d)(1)(B) and (2). If the transferred income is insufficient to reach the minimum needs allowance, the community spouse may then apply for an increase in his resource allowance to an amount adequate to fund his minimum needs allowance. 42 U.S.C. § 1396r, see Krueger Estate v. Richland County Social Services, supra, 526 N.W.2d 459. Because this increase in the resource allowance results from a transfer of resources from the institutionalized spouse to the community spouse, the value of the institutionalized spouse's resources is brought closer to the eligibility level.
 Under 42 U.S.C. § 1396r-5 (e)(2)(B), a community spouse may obtain an increase in his minimum needs allowance by establishing, at a fair hearing, a need for additional income "due to exceptional circumstances resulting in significant financial duress . . ." See also Uniform Policy Manual (1989) CT Page 10844 Section 1570.25.
In the present case, the plaintiffs requested a fair hearing on May 12, 1997 in order to increase the community spouse resource allowance for Mr. Anderson. At the hearing on July 21, 1997, the plaintiffs introduced evidence that the community spouse's monthly income of $2,379.71 was insufficient to meet Mr. Anderson's monthly rent of $2,352.00. The fair hearing officer directly inquired as to whether Mr. Anderson needed a higher monthly income than the MMNA cap amount of $1,975.50 as a result of exceptional circumstances. The following colloquy occurred:
 Ms. Konopacke. Mr. Anderson clearly has high shelter costs and that is the reason for his high MMNA as you calculated it. Are his high shelter expenses the result of an unusual circumstance?
 Attorney Kearns. No it is not an unusual circumstance. That is the amount of the rent at the apartment he has lived at since 1992 the last five years.
(ROR, Transcript, p. 71.)
In her notice of decision, dated October 29, 1997, the hearing officer affirmed the DSS denial of Mrs. Anderson's medicaid application and Mr. Anderson's request for an increased community spouse protected amount. The hearing officer found that the community spouse (Mr. Anderson) had not demonstrated any exceptional circumstances to warrant the need for the additional income above the MMNA. (ROR, pp. 2-4.) That finding is supported by substantial evidence in the record. Moreover, the fair hearing officer correctly followed appropriate federal and state standards and law as enunciated in Burinskas v. Department ofSocial Services, supra, in that the community spouse (Mr. Anderson) failed to establish a need for additional income due to exceptional circumstances resulting in significant financial duress. See also Gomprecht v. Gomprecht, 652 N.E.2d 936 (N Y 1995). The plaintiffs' argument that the hearing officer had no discretion to disregard shelter costs and that excess shelter expenses must be included as an additional cost in the MMNA calculation (Plaintiffs Brief, p. 17), finds no support in the law. Accordingly, the plaintiffs' argument that the fair hearing officer did not properly follow state and federal law in determining the MMNA or misinterpreted the law and regulations in CT Page 10845 that regard, must fail.
Finally, the plaintiffs' request for attorney's fees pursuant to General Statutes § 4-184a(b) will be denied since the DSS action in this case was not undertaken without any substantial justification. See Nagy v. Employees' Review Board,249 Conn. 693, 708-09 (1999).
Based on the foregoing, the plaintiffs' administrative appeal is dismissed.
Michael Hartmere, Judge