[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Edith Fortier, appeals the reconsideration decision of the defendant, Commissioner of the Department of Social Services ("DSS"), which denied the plaintiff's request for a higher minimum monthly needs allowance. Under medicaid eligibility law, a community spouse may apply for an increase in her minimum monthly maintenance needs allowance ("minimum needs allowance") by establishing a need for additional income "due to exceptional circumstances resulting in significant financial duress. . . ." 42 U.S.C. § 1396r-5(e)(2)(B); see also Uniform Policy Manual § 1570.25. The issue presented in this appeal is whether the fair hearing officer misapplied the exceptional circumstances standard in concluding that the plaintiff's state of health was not an exceptional circumstance warranting an increase in her minimum needs allowance. For the reasons set forth below, the court finds the issues in favor of the plaintiff.
The following facts are relevant to this appeal and are undisputed. In April of 1998, Ernest Fortier, the plaintiff's husband, was institutionalized in Liberty Special Care Center, a nursing facility. The plaintiff continued to reside in the couples home in the community. On or about May 27, 1998, DSS granted medicaid benefits to Mr. Fortier, retroactive to May 1, 1998. At the time of his medicaid application, DSS calculated Edith Fortier's minimum needs allowance to be $1,677.70. Her gross monthly income was $417.80, resulting in $1,259.90 being diverted from Mr. Fortier's monthly income to the plaintiff to meet her minimum needs deficit. Mr. Fortier's applied income paid to the nursing facility toward his cost of care was $821.20 per month, after allowing for further deductions from Mr. Forties's monthly income for medicare B premium and personal needs allowance.
On June 1, 1998, the plaintiff had a reduction in her rent from $492 to $374 resulting in a $118 reduction in her expenses. Accordingly, the plaintiff's minimum needs allowance was reduced CT Page 15261 to $1559.70, thereby reducing the income diverted from her husband's monthly income to $1141.90 and increasing Mr. Fortier's applied income amount to $939.20.
The plaintiff requested a fair hearing to apply for an increase in her minimum needs allowance. A hearing was held on June 25, 1998. At the fair hearing, the plaintiff claimed that her medical condition represented exceptional circumstances resulting in significant financial duress warranting an increase in the amount of her minimum needs allowance by $423 to enable her to pay for her out-of-pocket medical prescriptions. Evidence provided at the fair hearing established that the plaintiff suffers from numerous chronic medical conditions: including glaucoma, type two diabetes, high blood pressure, depression, hyper-tension, high cholesterol, vertigo, allergic rhinitis, asthma, fibromyalgia, dyspepsia, obesity, lower back problems, numbness in her legs, ptosis, dry eyes and secondary cataracts. The plaintiff is unable to walk any distance, climb stairs, lift or push heavy objects. She cannot stand for any length of time due to numbness in her legs and lower back pain. The plaintiff testified that due to her medical conditions, she was unable to perform routine everyday activities such as laundry, shopping, vacuuming and cleaning the house. The plaintiff is, however, able to shower by herself, dress, make the bed and dust.
On April 16, 1998, the plaintiff qualified for benefits, effective April 1, 1998, under the Connecticut Home Care Program for Elders. The plaintiff was classified as a category 1 individual, i.e. one who is at risk of hospitalization or short term nursing placement. The plaintiff, however, did not receive benefits under a medical waiver program. Under the Connecticut Home Care Program for Elders, the plaintiff was provided a homemaker three days a week for two hours per day, four hours of transportation services per month and a visiting nurse once a month to monitor her glucose and medication. The case manager, Anne Donovan, of Connecticut Community Care, Inc., described the plaintiff's condition as follows: "Client has numerous chronic health problems. . . . Function ability impaired by different types of muscular/ortho [diagnosis]. Mobility also impaired. Vision deficits negatively impacting ability to read med[ication] bottle and glucometer. Needs assist with personal care. . . . Needs assist with housekeeping, transport. Psychologically overwhelmed by personal and financial problems. . . ." (Return of Record, p. 109.) CT Page 15262
Evidence set forth at the hearing also established that the plaintiff was taking numerous medical prescriptions due to her medical condition. She is prescribed twenty eight medications costing approximately $1037 per month. On occasion, the plaintiff's doctors provide her with free samples. In April and May 1998, Mrs. Forties paid approximately $423 per month for her prescriptions and medications not covered by insurance.
The hearing officer, in the reconsideration decision, found that: "Neither spouse established that the community spouse needed income above the level provided by the [minimum needs allowance] due to exceptional circumstances resulting in significant financial duress. The state of health of the community spouse is not an exceptional circumstance. Whether the credit card, medical insurance, and prescription expenses cause significant financial duress is moot." (ROR, Volume I, Decision, p. 5, ¶ 10.)
The plaintiff thereafter filed the present appeal on October 13, 1998. The answer and record were filed on December 31, 1998. The plaintiff filed her brief on February 3, 1999 and the defendant filed its brief on April 5, 1999. The plaintiff filed a reply brief on July 9, 1999. The parties were heard in oral argument on July 15, 1999.
Because eligibility for medicaid benefits are at issue, the court finds that the plaintiff is aggrieved as a result of DSS's decision.
The issue raised by the plaintiff in the present appeal is whether the hearing officer properly followed state and federal law in determining the minimum needs allowance based on the standard of "exceptional circumstances resulting in significant financial duress."
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public UtilitiesControl, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury WaterCo. v. Public Utilities Commission, 174 Conn. 258, 260,386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that CT Page 15263 the agency followed appropriate procedures. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993);Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262,579 A.2d 505 (1990); Baerst v. State Board of Education,34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915,645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v.Commissioner of Social Services, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
A court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 164-65 (1993).
The medicaid program is a "joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care. . . ." (Citation omitted.) Burinskas v. Dept. of SocialServices, 240 Conn. 141, 148 (1997). Although a state's participation is voluntary, once it has elected to participate, it must "develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance. . . . Connecticut has elected to participate in the medicaid program and has assigned to the department the task of administering the program. General Statutes [§ 17b-260]. . . . The department as part of its uniform policy manual, has promulgated regulations governing the administration of Connecticut's medicaid system. See General Statutes § 17b-260"Burinskas v. Dept. of Social Services, 240 Conn. 148.
The medicaid program was modified in July, 1988, by the Medicaid Catastrophic Care Act of 1988, which addressed the problem of the impoverishment of the community spouse of an CT Page 15264 institutionalized spouse. "This enactment was intended, in part, to ease the financial burden placed on a community spouse under the prior statutory regime that required the institutionalized spouse to spend down a large portion of the couple's resources, and thus impoverish the community spouse, before becoming eligible for medicaid. . . . Under the catastrophic care act, a community spouse is entitled to receive a community spouse resource allowance (resource allowance), which is approximately one half of the couple's total liquid resources or $60,000, adjusted annually for inflation, whichever is less. . . . The resource allowance is protected from the institutionalized applicant's health care obligations and does not count against the applicant's financial eligibility." (Citations omitted; internal quotation marks omitted.) Burinskas v. Dept. of SocialServices, 240 Conn. 148-49.
"In addition, under the catastrophic care act, a community spouse is entitled to a minimum monthly maintenance needs allowance (minimum needs allowance). . . . If the community spouse's income from outside sources is insufficient to meet his minimum needs allowance, the institutionalized spouse is permitted to bridge this deficit by transferring income to the community spouse. If the transfer income is insufficient to reach the minimum needs allowance, the community spouse many then apply for an increase in his resource allowance to amount adequate to fund his minimum needs allowance." (Citations omitted; internal quotation marks omitted.) Burinskas v. Dent. of Social Services,240 Conn. 149.
42 U.S.C. § 1396r-5(e)(2)(B) provides as follows with regard to revision of the minimum needs allowance:
 If either such spouse establishes that the community spouse needs income, above the levels otherwise provided by the minimum monthly needs allowance, due to exceptional circumstances resulting in significant financial duress, there shall be substituted, for the minimum monthly maintenance needs allowed in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary.
This federal standard is found in the Connecticut Uniform Policy Manual, which the Department enacted pursuant to General Statutes § 17b-10, to implement the federal law. UPM § 1570.25D, which delineates the non-administrative duties of a fair hearing CT Page 15265 official, provides, in pertinent part: "(3) the [fair hearing] official increases the MMNA of the community spouse previously determined by the Department: (a) if it is established by the the community spouse or is that the community spouse needs a higher monthly income than permitted by the minimum needs allowance calculation; and (b) if this need for a higher income is due to exceptional circumstances resulting in significant financial duress including, but not limited to the financial burden of caring for a disabled child, sibling, or other immediate relative".
In the present appeal, the essence of the plaintiff's argument is that DSS ignored the reliable, probative, and substantial evidence on the whole record by finding that the Mrs. Forties's health did not constitute exceptional circumstances and that DSS erred in its interpretation and application of federal law. The court agrees.
The hearing officer's conclusion that Mrs. Forties's medical problems do not constitute exceptional circumstances is clearly erroneous in view of all the evidence. The evidence set forth at the hearing clearly establishes that the plaintiff has numerous medical conditions. These medical conditions result in the plaintiff's inability to perform many of the basic and routine activities of daily living. The plaintiff was classified as one who is at risk of hospitalization or short term nursing placement and under the Connecticut Home Care Program for Elders was provided with assistance to perform household chores, transportation services, and a visiting nurse to monitor her glucose and medication. The plaintiff also purchases roughly twenty eight prescriptions to treat her medical condition, which are not reimbursed by her insurance company. For the months of April and May 1998 Mrs. Forties incurred $423 per month in medical expenditures, with a saving account of $67.16.
In view of all of the evidence, the Department's decision was not reasonable was arbitrary and an abuse of its discretion. The conclusion that the plaintiff's medical condition did not constitute exceptional circumstances is not a correct application of law to the facts as found and could not reasonably and logically follow from such facts.
In the reconsideration decision, DSS did not address whether the plaintiff's expenses resulted in significant financial duress since it did not make a core finding of exceptional CT Page 15266 circumstances. The court, under the constraints of the UAPA, is unable to travel "a different path rather than determining whether the commission properly trod on the stepping stones of the path it took." Windham v. Freedom of Information Commission,48 Conn. App. 522, 527, cert. denied, 245 Conn. 913 (1998);Hartford v. Freedom of Information Commission, 41 Conn. App. 67,74 (1996). Accordingly, this is an issue to be addressed by DSS on remand.
Finally, in her amended complaint, the plaintiff requested attorney's fees pursuant to General Statutes § 4-184a(b). The plaintiff, however, failed to address this issue in her brief. Issues not briefed are deemed abandoned. Nonetheless, the court will deny the plaintiff's request since the DSS action in this case was not undertaken without any substantial justification. See Nagy v. Employees' Review Board, 249 Conn. 693, 708-09
(1999); Burinskas v. Department of Social Services, supra,240 Conn. 155-156. Based on the foregoing, the plaintiff's administrative appeal is sustained and the case is hereby remanded for further proceedings in accordance with this decision.
Robert F. McWeeny