[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the defendant Commissioner of the Department of Social Services, State of Connecticut ("DSS"), brought pursuant to General Statutes § 4-183 et seq., under the Uniform Administrative Procedure Act ("UNPA"). DSS had denied the plaintiff's application for Title XIX Medicaid benefits because the applicant exceeded the eligibility asset limit. This appeal to the Superior Court followed.
The factual background in this matter is largely undisputed. On February 28, 1997, Helen C. Shea applied for Medicaid, Title XIX benefits. The application form did not list any life insurance policies, although it did list "Met Life" under health insurance. However, the DSS caseworker assigned found on the computer that Ms. Shea had applied for Medicaid in 1995 and disclosed on that application that she owned a Met Life life insurance policy. In March, 1997, the caseworker contacted the Metropolitan Life Insurance Company to determine the value of the life insurance policy. The caseworker also requested the insurance company to disclose any other policies owned by the applicant. In April, 1997, Met Life informed the DSS caseworker that Ms. Shea's policy had a death benefit of $2,197.03, face value of $750.00, and a cash value of $2,079.72. However, Met Life failed to disclose the existence of two other life insurance policies which Ms. Shea owned at the time.
On May 7, 1997, DSS denied the February 28, 1997 application for Medicaid on the ground that the applicant's assets exceeded program limits. In fact, the DSS caseworker incorrectly used the death benefit amount if $2,179.03 of the insurance policy, instead of the face value of $750.00, and Ms. Shea was determined to be over assets and ineligible for benefits. A fair hearing was held before a DSS hearing officer on October 28, 1997, regarding this initial denial of benefits. The hearing officer's decision dated December 9, 1997, found that the caseworker improperly used the cash surrender value of the policy instead of the face value of the policy to determine eligibility. Since the face value of the insurance policy was only $750.00, the cash surrender value of the policy should have been excluded. Based upon that CT Page 15842 decision, the application was reopened by DSS.
While the hearing officer's decision was pending, the DSS caseworker again contacted Met Life to receive an update on the life insurance policy and again requested disclosure of any other policies which Ms. Shea owned. On November 20, 1997, DSS received an update from Met Life which riot only updated the foregoing policy, but also listed two other Met Life life insurance policies belonging to Ms. Shea which had been heretofore unknown. The two additional policies on the life of Helen C. Shea were policy number 133-338-282 with a face value of $361.87 and cash surrender value of $728.25, and policy number 485-009-915 with a face value of $580.97 and a cash surrender value of $1,660.14.
After these two other policies were discovered, DSS notified the conservator, plaintiff Kieren M. Moore, in November, 1997. Attorney Moore contacted Met Life and liquidated the two additional policies in December, 1997.
Thereafter, DSS granted Title XIX benefits effective December 1, 1997, but denied benefits for prior months based on excess assets, namely the three Met Life life insurance policies. On February 12, 1998, the plaintiff requested a second fair hearing on the denial of benefits for periods prior to December, 1997. The plaintiff's argument at the second fair hearing was that the two unknown insurance policies were not accessible to the applicant and therefore the applicant was not over the asset limit and eligible for Medicaid benefits commencing three months prior to the February, 1997, application. The hearing officer found that Ms. Shea owned the three Met Life life insurance policies from February 28, 1997 through November 30, 1997. Accordingly, Ms. Shea did not become eligible for Medicaid until December 1, 1997, the first day of the month in which she reduced her equity in counted assets to within the asset limit. This appeal to the Superior Court followed.
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial "rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public UtilitiesControl, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury WaterCo. v. Public Utilities Commission, 174 Conn. 258, 260,386 A.2d 232 (1978). Courts will not substitute their judgment for that of CT Page 15843 the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993);Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262,579 A.2d 505 (1990); Baerst v. State Board of Education,34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915,645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v.Commissioner of Social Services, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
A court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 164-65 (1993).
The Medicaid program is a "joint federal-state venture providing financial' assistance to persons whose income and resources are inadequate to meet the cost of necessary medical care. . . ." (Citation omitted.) Burinskas v. Dept. of SocialServices, 240 Conn. 141, 148 (1997). Although a state's participation is voluntary, once it has elected to participate, it must "develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance." Id. Under General Statutes § 17b-260, the commissioner of social services is authorized to take advantage of the medical assistance program provided in Title XIX of the Social Security Act, codified as 42 U.S.C. § 1396 et seq., and under § 17b-2, DSS administers the Medicaid program.
DSS has promulgated regulations as part of its uniform policy manual to administer the Medicaid program. General Statutes §17b-262. Under the pertinent provisions of the DSS's uniform CT Page 15844 policy manual, the asset limit for the Medicaid program is $1,600 for one, and eligibility is determined the first day of the month in which the applicant reduces her equity in counted assets to within the asset limit. Uniform Policy Manual (UPM) §§ 4005.10, 4005.15. The burden is on the applicant to demonstrate that an asset is inaccessible. UPM § 4015.05B.1. In the present case, the assets which were the trigger for the plaintiff's ineligibility determination were the three life insurance policies with Met Life. The plaintiff contends that the DSS decision denying Medicaid assistance should be reversed by this court based on three main arguments.
The first argument is that the two recently discovered life insurance policies should not have been counted in determining eligibility for Medicaid. The plaintiff claims that these insurance policies on the life of Helen C. Shea were inaccessible to Helen C. Shea and thus should not be counted based on DSS policy. Under UPM §§ 4005.05.C and 4015, DSS does not count an asset toward the asset limit if the asset is inaccessible.
The total face value of Ms. Shea's three life insurance policies was $1,692.84. Thus, under UPM §§ 4020.101 and 4030.30, the cash surrender value of Ms. Shea's three life insurance policies were counted in determining her assets. The cash surrender value of these policies totaled $4,474.02. This is an amount in excess of the allowable $1,600 limit under the UPM, and DSS determined Ms. Shea to be ineligible for Medicaid until her conservator surrendered the life insurance policies for the cash surrender value. That occurred in December, 1997.
The plaintiff argues that the facts of this case fit the definition of "inaccessible" under § 4015.05C.5, since the insurance policies were no longer in the physical possession of Ms. Shea or her conservator and Met Life refused to return the policies. However, the plaintiff did not need physical possession of the insurance policies in order to receive the cash surrender value. Indeed, here, the cash surrender value of the policies was recovered from Met Life once the existence of the policies came to light, without the actual policies in hand.
The plaintiff also contends that Ms. Shea should not be denied Medicaid benefits because neither he nor the previous conservators were aware of the existence of Ms. Shea's life insurance policies. However, the conservators' lack of knowledge of the insurance policies did not render the insurance policies CT Page 15845 inaccessible since a conservator's duties include the supervision of the financial affairs of a person who is incapable of managing his or her own affairs. Marcus' Appeal From Probate,199 Conn. 524, 528 (1986). General Statutes § 45a-655 (a) provides the following concerning the duties of a conservator:
 A conservator of the estate . . . shall, within two months after the date of his or her appointment, make and file in the Court of Probate, an inventory under oath of the estate of his or her ward, with the properties thereof appraised or caused to be appraised, by such conservator, at fair market value as of the date of his appointment. Such inventory shall include the value of the ward's interest in all property in which the ward has a legal or equitable present interest, including, but not limited to, the ward's interest in any joint bank accounts or other jointly held property. The conservator shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward and those members of the ward's family whom he has the legal duty to support and to pay his debts, and may sue for and collect all debts due the ward.
Thus, the conservator has a statutory duty to determine what assets comprise the ward's estate. Here, it was not the duty of the insurance company, nor of DSS, to determine what assets comprised Ms. Shea's estate, and then to inform the conservator in order to allow the conservator to manage Ms. Shea's estate. It is regrettable that Ms. Shea's prior conservators failed properly to execute their duties, however, that does not render the insurance policies inaccessible.
The plaintiff's argument that the conservators' lack of knowledge of Ms. Shea's assets should render those assets inaccessible finds no support in the case law, statutes or UPM. Of course, acceptance of the plaintiff's argument would place an impossible burden on DSS. The burden of filing a proper Medicaid application is and must be, placed upon the applicant. Here, the fact that a DSS caseworker independently checked Ms. Shea's assets did not shift that burden to file a proper application to DSS. The plaintiff's argument to the contrary must fail.
The plaintiff's second argument is that Medicaid benefits should be retroactively granted because Ms. Shea was prejudiced by the improper action of DSS in denying Medicaid benefits in CT Page 15846 May, 1997. The argument is that had Ms. Shea been granted Medicaid benefits in May, 1997, she would have been receiving benefits when the two additional insurance policies were disclosed to DSS by the insurance company. Since those policies were liquidated by the conservator once they became known, Ms. Shea's eligibility would not have been affected when the policies were discovered in November, 1997.
However, Ms. Shea owned the two life insurance policies on February 28, 1997, when she applied for Medicaid benefits. There is substantial evidence in the record to support that finding. The fact that DSS miscalculated her assets on another ground, does not change that fact. Ms. Shea would have been ineligible for Medicaid benefits in May, 1997, based upon the two undisclosed policies. As discussed above, it was not the duty of DSS nor of the insurance company to inventory the applicant's assets. Again, the duty to do so was squarely upon the conservators. The conservators' failure to fulfill their duties cannot be attributed to DSS.
The plaintiff's third argument is that the denial of Medicaid benefits by DSS is unfair, inequitable, and creates undue hardship on Ms. Shea under the circumstances, and is inconsistent with the mission statement of DSS.
This court finds that the DSS decision here is consistent with its responsibilities. DSS must ensure that only those who meet eligibility criteria for Medicaid assistance receive such assistance. In doing so, DSS is required to follow state and federal statutes as well as state and federal regulations in determining eligibility. See UPM § 1000. The DSS decision to deny Ms. Shea Medicaid benefits from three months prior to February, 1997 through November, 1997 is consistent with the DSS obligation to provide benefits only to persons who are eligible to receive such benefits pursuant to state and federal law.
Based on the foregoing, this court will find that the DSS determination concerning the plaintiff's assets for Medicaid eligibility purposes was correct. The plaintiff's administrative appeal therefrom is dismissed.
Michael Hartmere, Judge CT Page 15847